# Exhibit 4

# CPI Antitrust Chronicle
May 2013 (1)

## Sensible Discovery: Effective Strategies to Streamline the Discovery Process and Save Clients' Money

Robert Corp & Chul Pak
Wilson Sonsini Goodrich & Rosati

www.competitionpolicyinternational.com
Competition Policy International, Inc. 2013© Copying, reprinting, or distributing this article is forbidden by anyone other than the publisher or author.

# Sensible Discovery: Effective Strategies to Streamline the Discovery Process and Save Clients' Money

## Robert Corp & Chul Pak[1]

### I. INTRODUCTION

Defending private antitrust litigation can be a pricey undertaking, the result of several factors. The nature of the allegations often prompts courts to allow plaintiffs to engage in broad discovery that can cost a company millions and, given the typically high-stakes nature of antitrust matters, the defending companies have no choice but to invest significant resources to respond. Plaintiffs litigate these cases aggressively, particularly class-action lawyers, pushing prices further upwards. Antitrust cases often span a number of years, with millions of documents collected, produced, and reviewed. The recent explosion in electronic document generation and storage has significantly increased the litigation expenses.

With these daunting cost pressures, controlling discovery costs is an essential function of outside counsel and, fortunately, there are effective ways that can help reduce the litigation costs. A key theme running through each of these strategies is that they occur early in the case, as topics perhaps considered mundane or procedural can determine whether costs will eventually spiral out of control.

### II. LIMIT CUSTODIANS

In our experience, the best defense is an early defense. Failure to recognize and screen who are the key employees during initial interviews can result in unnecessary costs. Each additional custodian usually means tens (often hundreds) of thousands of additional documents that must be collected, processed, hosted, reviewed, and produced—this is a much more costly process than many realize. Experience and industry awareness dictate that each additional custodian for an antitrust case can cost roughly $165,000, depending on the volume of material each custodian maintains.

Defendants are well served by a zealous effort to fully understand the scope and responsibilities of employees' jobs at the beginning of a litigation. Being fully armed with all possible information concerning a company and its employees allows for vigilance in combating attempts to expand the scope of discovery. Clients are much more understanding of the hours spent developing this factual base, through extensive employee interviews and perhaps sampling of potential custodians' files, when they realize the dollars that will be saved down the road.

Taking aggressive positions relating to limiting custodians may well result in additional motions to compel. Defending such a motion is only a small fraction of the cost of even one additional custodian; potential savings can surge as more are put in play. A firm understanding of a company's structure and the roles of potential custodians allows for a convincing defense when such motions are opposed. Courts are quite receptive when a defendant can illustrate the

---

[1] Robert Corp, Associate, Wilson Sonsini Goodrich & Rosati; Chul Pak, Partner, Wilson Sonsini Goodrich & Rosati.

massive costs of needlessly expanding discovery to simply satisfy a plaintiffs' curiosity. The ability to prove that a burden is too great, and the likelihood of reward for plaintiff is too remote to justify the waste of additional resources, depends on proper preparation.

### III. REDUCE COSTS OF DOCUMENT REVIEW

After the list of custodians has been finalized and their documents have been collected, we have identified some key best practices to save time and money. Negotiating sensible review protocols is crucial to saving the resources of all parties involved in a litigation, but a lawyer must know what to ask for.

A vital step in every document review is to demand that the parties agree to de-duplication. Every document review platform worth considering provides this functionality, which allows for identical documents to be identified and removed from a review. In our experience, performing de-duping can cut the universe of documents that must be considered by as much as 50 percent. The fewer the documents, the easier the review—always.

Additional strategies are more case specific, but should be sought where possible. Establishing mutually accepted search terms to use to cull the documents prior to review is an efficient and effective way to preserve valuable resources. Defense litigators would be well advised to pursue this method with vigor; even the application of broad and extensive terms can greatly reduce the number of documents that must be reviewed. A recent article found that the cost of review, alone, is more than $1 per document.[2] Reducing the scope of discovery by only a small percentage can mean the savings of hundreds of thousands of dollars as antitrust litigation routinely produces millions of documents.

The number of documents that must be reviewed will dictate the answer to a vital question: Who will perform the review? Contract attorneys from an outside agency cost less than full-time associates at a law firms, but the temptation to reduce document review costs must be tempered by the quality of document review. Full development of defense themes and storylines favorable to the defense may require a deep-dive review by law firm associates. Penny-wise but pound-foolish really can be true in antitrust litigation.

If document review work is outsourced, a defense firm must remain very engaged with the review team throughout the review process in order to avoid major mistakes that can damage a case. This is not something that can be paid lip service. A talented and careful senior attorney should have daily interaction with the reviewers—they should be available to answer all questions and provide guidance. A senior person should perform daily quality control checking. If responsive documents are not produced, or if privileged documents are allowed to go out the door, there can be major repercussions on the ability to defend the litigation.

---

[2] Joe Palazzolo, *Software: The Attorney Who Is Always on the Job*, WALL STREET J. (May 6, 2013), http://online.wsj.com/article/SB10001424127887324582004578460860324234712.html. This article is a recommended overview of the emerging use of the technology of "predictive coding." Predictive coding is a practice offered by a number of document review vendors that can "hunt for concepts" and be "unleashed across millions of documents at once." *Id*. The palatability of this strategy to courts is evolving, and should be tracked by all interested in reducing litigation costs. To the extent clients and litigators are progressive and aggressive, being at the vanguard of the movement can result in massive savings.

## IV. DEMAND A REASONABLE PRIVILEGE LOG

Privilege logs, demanded by Rule 26, can often be expensive undertakings. We have fought hard, and successfully, in recent litigations to garner approval from the presiding judge to reduce the demands presented by a typical privilege log process. Creating a standard privilege log with the number of entries generated by large electronic productions is incredibly costly and time-consuming. But because privilege logs are required, the goal here is to find a reasonably efficient middle ground that achieves cost savings while still providing the information to which plaintiffs are entitled.

Automating the process of creating the privilege log is a sensible alternative that can result in tremendous savings. To do this a defendant may identify potentially privileged documents through an electronic search of key terms. The defendant then may withhold documents generated by the computer-search criteria without conducting a substantive review to ascertain the nature of the privilege, if any. A privilege log identifying the withheld documents is submitted to the opposing party; plaintiffs may then challenge an agreed upon number of documents for which defendants can conduct a substantive review to ascertain the nature of the privilege.

## V. IN CLOSING

Expertise in managing discovery is not glamorous; discovery motions are certainly not romanticized among the ranks of associates, and clients often do not understand why they are paying thousands of dollars on motions to compel. Committing true talent and resources to these issues can result in millions of dollars in savings. Thus, understanding (and being able to illustrate) the importance of a clear and effective discovery strategy is an invaluable asset in demonstrating a firm's worth to potential clients.