Jason S. Takenouchi (CBN 234835)
**Kasowitz Benson Torres LLP**
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 421-6140
Fax: (415) 398-5030
JTakenouchi@kasowitz.com

Marc E. Kasowitz (*pro hac vice*)
Christine A. Montenegro (*pro hac vice*)
Nicholas A. Rendino (*pro hac vice*)
**Kasowitz Benson Torres LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
mkasowitz@kasowitz.com
cmontenegro@kasowitz.com
nrendino@kasowitz.com

*Attorneys for Plaintiff MLW Media LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLW MEDIA LLC,<br><br>Plaintiff,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT INC.,<br><br>Defendant. | Case No: 5:22-cv-00179-EJD<br><br>**PLAINTIFF MLW MEDIA LLC'S OPPOSITION TO DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S MOTION FOR PROTECTIVE ORDER** |

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1

**TABLE OF CONTENTS**

2

**Page(s)**

3

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ 1

4

INTRODUCTION ........................................................................................................... 1

5

FACTUAL BACKGROUND ........................................................................................... 3

6

ARGUMENT .................................................................................................................. 9

7

I.     LEGAL STANDARD ........................................................................................... 9

8

II.    WWE HAS NOT MET ITS "HEAVY BURDEN" TO SHOW GOOD CAUSE
       FOR A BLANKET STAY OF DISCOVERY ....................................................... 10

9

10     A.     WWE Has Failed To Satisfy The First Prong To Obtain A Stay Of
              Discovery ................................................................................................ 10

11     B.     WWE Has Failed to Satisfy the Second Prong to Obtain A Stay of
              Discovery ................................................................................................ 14

12

13     C.     The Balance of Public and Private Interests Weighs Against a Stay of
              Discovery ................................................................................................ 14

14     D.     WWE Cannot Stay Discovery Based on Supposed Costs It Claims That It
              Will Incur ................................................................................................ 15

15

16     E.     WWE's Argument That A Stay Is Warranted Because The Court Lacks
              Subject Matter Jurisdiction Over This Dispute Is Meritless ..................... 17

17

CONCLUSION ............................................................................................................. 18

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*al-Kidd v. Ashcroft*,
 580 F.3d 949 (9th Cir. 2009) ............................................................................. 12

*Arcell v. Google LLC*,
 2022 WL 16557600 (N.D. Cal. Oct. 31, 2022) ................................................ 3, 16

*Bly-Magee v. California*,
 236 F.3d 1014 (9th Cir. 2001) ............................................................................ 15

*Dine v. Metro. Life Ins. Co.*,
 255 F.R.D. 534 (C.D. Cal. 2009) .......................................................................... 3

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
 504 U.S. 451 (1992) ............................................................................................ 14

*Gray v. First Winthrop Corp.*,
 133 F.R.D. 39 (N.D. Cal. 1990) ...................................................................*passim*

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
 No. 11-cv-03613-EJD, 2012 WL 2711040 (N.D. Cal. July 6, 2012) ................... 12

*High Tech. Careers v. San Jose Mercury News*,
 996 F.2d 987 (9th Cir. 1993) .............................................................................. 14

*Jackson v. Carey*,
 353 F.3d 750 (9th Cir. 2003) .............................................................................. 15

*LePage's, Inc. v. 3M*,
 324 F.3d 141 (3d Cir. 2003) ............................................................................... 12

*Malley v. San Jose Midtown Dev. LLC*,
 No. 5:20-cv-01925-EJD, 2020 WL 5877575 (N.D. Cal. Oct. 2, 2020) ................ 18

*Mlejnecky v. Olympus Imaging Am., Inc.*,
 2011 WL 489743 (E.D. Cal. Feb. 7, 2011) ......................................................... 17

*Mujica v. Airscan Inc.*,
 771 F.3d 580 (9th Cir. 2014) ................................................................................ 9

*In re Netflix Antitrust Litig.*,
 506 F. Supp. 2d 308 (N.D. Cal. 2007) ............................................................. 3, 16

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

ii

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008)............................................................................ 11, 13

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
   No. 5:16-CV-06370-EJD, 2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) ...................... *passim*

*Palantir Techs Inc. v. Abramowitz*,
   2020 WL 13548687 (N.D. Cal. Jan. 30, 2020) ......................................................... 10

*Top Rank, Inc. v. Haymon*,
   No. CV 15-4961-JFW, 2015 WL 9952887 (C.D. Cal. Sept. 17, 2015) ................................ 15

*Retrophin, Inc. v. Questcor Pharms., Inc.*,
   41 F. Supp. 3d 906 (C.D. Cal. 2014).................................................................... 12

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
   No. 12-cv-05847-JST (N.D. Cal. Apr. 29, 2013), ECF 80 ............................................. 10

*San Francisco Tech. v. Kraco Enters. LLC*,
   No. 5:11-CV-00355 EJD, 2011 WL 2193397 (N.D. Cal. June 6, 2011) ............................. 9, 15

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
   676 F.2d 1291 (9th Cir. 1982)........................................................................... 11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)........................................................................... 15

**Statutes**

Fed. R. Civ. P. 8 .......................................................................................... 7, 9, 13

Fed. R. Civ. P. 9(b) ...................................................................................... 15

Fed. R. Civ. P. 12(b)(6)................................................................................... 11, 13, 15

Fed. R. Civ. P. 26 ....................................................................................... *passim*

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

iii

1    Plaintiff MLW Media LLC ("MLW") submits this memorandum of law in opposition to

2    the motion of Defendant World Wrestling Entertainment, Inc. ("WWE") for a protective order

3    (ECF 51) ("Mot.").[1]

4    ## STATEMENT OF THE ISSUES TO BE DECIDED

5    1.    Whether WWE has met its "heavy burden" to demonstrate good cause to impose a

6    blanket stay of discovery more than ten months after it filed its pending motion to dismiss, where

7    this Court has already entered a Case Management Order ("Scheduling Order") requiring the

8    parties to comply with fact and expert discovery deadlines, and where MLW has proposed to

9    narrow its already narrowly tailored discovery requests.

10    ## INTRODUCTION

11    WWE has done everything in its power to avoid providing discovery that will shine a light

12    on its egregious efforts to destroy its competitor MLW's business.  More than one year has

13    elapsed since MLW filed its antitrust action seeking redress for WWE's unlawful scheme to

14    monopolize the U.S. market for the sale of broadcasting rights for professional wrestling

15    programs, and yet discovery remains at a standstill because of WWE's bad-faith purposeful delays

16    and unilateral refusal to engage in the discovery process.  WWE has seized every opportunity to

17    prevent discovery from commencing in this case:  WWE refused to meet and confer as required

18    under Rule 26(f) until the last possible day for compliance, delayed finalizing the parties' Joint

19    Rule 26(f) report, prolonged or declined negotiations over standard discovery protocols and a draft

20    protective order—the former of which remain outstanding as of the date of this filing—and

21    requested a five-week extension to respond to MLW's narrowly tailored discovery requests

22    because, among other reasons, "the November holiday [is] approaching," even though WWE had

23    no intention of ever honoring its discovery obligations.  (Decl. Ex. D at 4.)  Indeed, WWE has

24    flouted this Court's Scheduling Order by refusing to comply with the discovery deadline "until the

25    _____

26    [1] Attached herewith is the Declaration of Jason S. Takenouchi ("Decl.") with accompanying

27    Exhibits ("Ex.").

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1

1    Court rules on [WWE's] motion to dismiss."  (Decl. Ex. D at 1.)  And even more egregiously,

2    WWE waited ten months after filing its motion to dismiss to seek a protective order.  As detailed

3    below, this Court should deny WWE's defective motion to stay in its entirety.

4         WWE cannot satisfy its "heavy burden" to meet the two-prong test to obtain a blanket stay

5    of discovery.  First, as set forth at length in MLW's Opposition to WWE's motion to dismiss

6    ("Opposition") (ECF 33), and contrary to WWE's assertion, WWE's motion to dismiss does not

7    dispose of the entire case.  MLW has more than adequately alleged its antitrust and other related

8    claims.  Second, WWE's motion raises challenges that are not suitable for resolution as a matter of

9    law, but rather raises factual disputes that can only be resolved through discovery.

10        Nor can WWE demonstrate that the balance of public and private interests weighs in favor

11   of a protective order here.  MLW has served narrowly-tailored requests seeking relevant

12   information concerning:  (i) WWE's acts to prevent MLW from airing its content on Tubi and

13   VICE TV ("VICE"); (ii) WWE's exclusive contracts with its networks and talent; (iii) WWE's

14   predatory poaching of competitors' talent when WWE has no intention of using that talent once at

15   WWE; and (iv) WWE's acts to block its competitors from accessing arenas to create professional

16   wrestling content.  Any objections that WWE supposedly has with MLW's discovery requests can

17   be resolved through meet and confers and negotiations over search terms as opposed to a blanket

18   stay.  Indeed, during the parties' first meet and confer on January 4, 2023—one day before WWE

19   filed this meritless motion—MLW agreed to narrow the scope of eight requests and negotiate

20   search terms so WWE could efficiently search and collect documents.  Further, WWE's

21   speculative estimate of the discovery costs it will incur should be rejected, particularly given the

22   parties have not even negotiated search terms and discovery parameters.

23        Moreover, the balance of the public and private interests does not warrant a departure from

24   the presumption that discovery should proceed in this case.  As a result of WWE's delay in filing its

25   motion to stay, WWE's motion will not be *heard* until May 11, 2023—*four months* shy of the fact

26   discovery cutoff of September 29, 2023 set by this Court.  Because WWE is refusing to comply

27   with this Court's Scheduling Order and well-established law that recognizes a defendant is "not

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

2

excused . . . from fully complying with its discovery obligations" while a motion for a protective order is pending, MLW will undoubtedly be prejudiced by WWE's unilaterally imposed stay. *Dine v. Metro. Life Ins. Co.*, 255 F.R.D. 534, 536 (C.D. Cal. 2009), *rev'd on other grounds*, 449 F. App'x 646 (9th Cir. 2011).

Lastly, WWE relies heavily upon *Arcell v. Google LLC*, 2022 WL 16557600 (N.D. Cal. Oct. 31, 2022) and *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) in arguing for a protective order. However, those cases are inapposite because neither involved a motion to stay discovery that was filed with a pending discovery deadline and, as such, did not involve stays that prejudiced plaintiffs. Indeed, this Court expressly rejected WWE's proposal in the Rule 26(f) report to delay discovery until two weeks after ruling on its motion to dismiss and instead ordered the parties to complete fact discovery by September 29, 2023. Thus, WWE has not satisfied its "heavy burden" for a stay and certainly should not be rewarded for its bad faith conduct.

## **FACTUAL BACKGROUND**

*WWE delays the Rule 26(f) conference and Negotiation of the Joint Rule 26(f) Report:* MLW filed its complaint in this action on January 11, 2022 (ECF 1 or "Compl.") seeking damages and injunctive relief against WWE's anticompetitive practices. To initiate discovery, and consistent with the parties' obligations under the Federal Rules of Civil Procedure, MLW requested a Rule 26(f) conference with WWE "as soon as practicable," from as early as March 2022. (*See* Decl. ¶¶ 6, 13, Ex. A.) However, at every step, WWE employed varying tactics to impede discovery, including by delaying its obligation to meet and confer as required under Rule 26(f).

WWE moved to dismiss on March 15, 2022 (ECF 19 or "MTD"), and pursuant to the So-Ordered briefing schedule (ECF 22) the motion to dismiss was fully briefed as of May 16, 2022 (ECF 33 or "MTD Opp.", ECF 36 or "MTD Reply"). The motion to dismiss was taken under submission without oral argument on September 20, 2022, and it remains *sub judice*. In the

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1   interim, the Initial Case Management Conference ("ICMC") was reset for October 27, 2022 (ECF

2   32).

3        Rather than meeting and conferring "as soon as practicable," as required under Rule 26(f),

4   WWE refused to meet and confer until the last possible date for compliance.  (Decl. ¶ 19, Ex. B.)

5   WWE's delay was purposeful:  MLW could not seek discovery from WWE "before the parties

6   conferred as required by Rule 26(f)."  Fed. R. Civ. P. 26(d).  But WWE's efforts to impede

7   discovery did not stop there.  During the parties' Rule 26(f) conference on October 6, 2022, the

8   parties agreed to work together in order to submit a Joint 26(f) report by the October 17, 2022

9   deadline set by the Court (ECF 32).  However, on October 14, the ICMC was reset to December

10  15, 2022 (ECF 44), and WWE seized another opportunity for delay:  despite already holding the

11  Rule 26(f) conference and already drafting the Joint Rule 26(f) Report, WWE stated on October

12  16 that it would not consent to the filing of the Joint 26(f) report and that it would send further

13  edits in "due course."  (Decl. ¶ 20, Ex. C at 1.)  WWE did not send its additional edits until 36

14  days later, on November 21.  (Decl. ¶ 23, Ex. E at 1.)

15       ***WWE delays the negotiations of the protective order and ESI protocol:***  WWE also

16  purposefully delayed the process for negotiating standard discovery protocols and a protective

17  order.  On October 7, 2022, the day after the parties' Rule 26(f) conference, MLW provided WWE

18  with a draft protective order ("Protective Order") and draft discovery protocols governing

19  electronically stored information ("ESI Protocol"), fact discovery, and expert discovery.  (Decl.

20  ¶ 20, Ex. C at 2.)  On October 13, WWE's counsel informed MLW that it would review and

21  respond "to each [of the draft documents] in due course."  (*Id.*)  On November 21, 2022, *more*

22  *than six weeks later*, WWE responded with edits to only the proposed Protective Order and ESI

23  Protocol.  (Decl. ¶ 23, Ex. E at 1.)  Despite WWE's stonewalling, MLW promptly turned around

24  its responses to WWE's edits to the draft Protective Order and ESI Protocol within four days, on

25  the day after Thanksgiving.  (Decl. ¶ 24, Ex. F at 1.)  WWE then waited another *eighteen days* to

26  respond to MLW's edits.  (Decl. ¶ 24, Ex. H at 1-2.)  The Parties met and conferred on December

27  19 to discuss the outstanding issues, and MLW turned its next set of edits to WWE *the following*

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

4

*day* on December 20.  (Decl. ¶ 25, Ex. I at 2.)  WWE, by contrast, waited *fourteen days*, until January 3, 2023, to provide its respective edits.  (*Id.* at 1.)  But most gallingly, WWE used its own delay in negotiating the Protective Order and ESI Protocol to then justify its refusal to respond to MLW's document requests.  (*See, e.g.*, ECF 51-4 ("R&O") at 6 ("WWE objects to Request No. 1 as premature because discovery is not yet open in this case, no protective order is in place, and no ESI protocol has been implemented.").)

**WWE acts in bad faith in seeking an extension to respond to MLW's discovery requests:** On October 17, 2022, MLW served requests for production ("RFPs") on WWE, but on October 25 WWE asked for a five-week extension to respond, in part because "the November holiday [is] approaching." (Decl. ¶ 21, Ex. D at 4.)  MLW indicated that it would agree to a three-week extension of the deadline, but WWE declined and indicated that it needed until December 23, 2022, (more than two months) to respond.  (*Id.*)  On November 4, 2022, the parties agreed to a five-week extension on the condition that WWE agreed to "not move to stay discovery prior to responding to the requests." (Decl. ¶ 21, Ex. D at 1-2.)  Indeed, when WWE finally served its responses and objections to MLW's RFPs, it flat out refused to produce any responsive documents because "discovery does not open until the Court rules on the motion to dismiss." (Decl. Ex. D at 1.)  Further, WWE used its own three-month delay in finalizing the Protective Order and ESI Protocol as its purported justification for refusing to produce documents, claiming that "no protective order is in place, and no ESI protocol has been implemented." (*See, e.g.*, R&O at 3.) As of the date of this filing, the ESI Protocol remains outstanding.  It is now clear that WWE acted in bad faith in seeking an extension as it never had any intention of producing documents in response to MLW's RFPs.

**WWE refuses to abide by this Court's Scheduling Order and waits ten months after filing a motion to dismiss to seek a stay:** Significantly, WWE has refused to abide by this Court's Scheduling Order (ECF 49) on the basis that it can unilaterally stay discovery merely by filing its motion to dismiss.  (Decl. Ex. D at 1.)  Yet, the Court specifically rejected WWE's proposal in the Rule 26(f) Report that discovery be delayed until "[two] weeks after the Court's ruling on [the]

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

5

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

pending motion to dismiss" (ECF 47 at 13) by ordering the parties to complete fact and expert discovery by September 29, 2023 and January 25, 2024, respectively, (ECF 49). WWE's gamesmanship is all the more evident when considering that WWE did not timely file a motion to stay, but waited until ten months after filing its motion to dismiss. Given the hearing on WWE's motion to stay is set for May 11, 2023, and that WWE has openly admitted it will not abide by the Court's Scheduling Order until this Court rules on its motion to dismiss, (Decl. Ex. D at 1), MLW will be prejudiced by having only 141 days to complete discovery given WWE's unilaterally imposed stay.[2] The court recognized in *Johnson v. Molina*, that while courts do "not expect a request to stay be filed immediately after the issuance of the discovery order, it is reasonable to require Defendants to file a request sooner rather than later," and that stays of discovery are "not warranted" under circumstances of delay. Order at 2, No. 1:13-cv-00647 LJO DLB PC (E.D. Cal. July 3, 2014), ECF 31 (denying motion where Defendants "waited until the expiration of the time to serve initial disclosures to make the instant request").

**_WWE seeks a protective order just one day after the parties' meet and confer on MLW's narrowly tailored discovery requests:_** WWE claims that MLW's RFPs are "overbroad, burdensome and improper." (Mot. at 5.) That is not true. MLW's requests are narrowly tailored to seek relevant information related to its claims, including information related to WWE shutting out MLW from distribution agreements with Tubi and VICE and maintaining exclusive contracts with its networks and talent. WWE also fails to inform this Court that one day prior to filing its motion on January 4, 2023, the parties met and conferred, during which time MLW explained the relevance of its discovery requests and proposed to narrow certain requests. (Decl. ¶ 28.) As to the specific requests WWE takes issue with (Mot. at 5-6), the requests are narrowly tailored and are directly relevant to the claims at issue in this litigation. For example:

---

[2] Nor can WWE impose its own schedule upon the Court by claiming that it is willing to stipulate to extending fact discovery for however long its Motion for Protective Order remains pending.

6

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

- Request Nos. 14-17 relate to documents concerning WWE's hiring, use and termination of professional wrestlers given WWE's predatory history of poaching MLW's talent and then intentionally failing to use that talent once hired. These requests are relevant to MLW's complaint concerning, among other allegations, WWE's unfair business practices, which include "interfering with contracts, poaching talent, . . . and misappropriating and attempting to misappropriate confidential information of its competitors," (Compl. ¶ 71), and specifically to the allegation that WWE "sought to poach MLW's fighters who were under exclusive contracts, and even aired footage of an MLW wrestler without MLW's consent," (Compl. ¶ 33). WWE also fails to disclose to the Court that MLW offered to narrow Request No. 16 to documents relating to WWE's use and non-use of talent.

- Request Nos. 19-23 seek documents related to WWE's solicitation or hiring of specific former MLW wrestlers, which are also relevant to MLW's allegation that WWE "sought to poach MLW's fighters who were under exclusive contracts, and even aired footage of an MLW wrestler without MLW's consent." (Compl. ¶ 33.) These documents are also relevant to MLW's antitrust and unfair competition allegations that "WWE also sought to prevent wrestlers from working with MLW by [threatening not] to hire wrestlers who had worked for MLW. As a result of WWE's efforts, one of MLW's wrestlers demanded to be released early from his contract so he could join WWE." (Compl. ¶¶ 71, 79.) Contrary to WWE's assertion (Mot. at 6), WWE cannot shield these documents simply because MLW did not identify the names of the specific wrestlers in its complaint (which is not required under Rule 8). MLW has clearly identified the names of the former MLW wrestlers in its RFPs and initial disclosures, which is more than sufficient.

- Request No. 26 concerns WWE's efforts to prevent competitors from booking arenas or venues for the production of professional wrestling content. As pleaded in the Complaint, WWE "leveraged its decades-long relationships with virtually every

7

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1  major arena in the United States to make it harder for WWE's competitors to book

2  arenas which are critical for wrestling promotions and the production of weekly

3  programming.  For example, WWE has blocked AEW from hosting an event in two

4  arenas in Cincinnati, Ohio." (Compl. ¶ 28.)  Incredibly, on December 23, 2023,

5  WWE agreed to "search for and produce" documents responsive to this request but

6  now complains to this Court about its relevance.  (R&O at 24.)

- Request No. 24 seeks third party complaints, claims and lawsuits related to WWE
  wrongfully poaching and soliciting employees or contractors, which are relevant to
  MLW's allegations concerning WWE's unfair business practices and
  anticompetitive conduct, including "interfering with contracts, poaching talent, . . .
  and misappropriating or attempting to misappropriate confidential information of its
  competitors." (Compl. ¶¶ 70-80.)  While WWE claims this request applies to all
  employees for a twelve-year period, WWE fails to inform this Court that during the
  January 4 meet and confer, MLW agreed to limit the request to solely wrestlers and
  to negotiate a limited time period for this request.  (Decl. ¶ 28.)

- Request No. 25 seeks WWE's employees' complaints, claims and lawsuits relating
  to WWE's hiring or retention of WWE's employees, which are relevant to MLW's
  allegations that WWE erects high barriers to entry through "exclusive contracts
  controlling wrestling talent," (Compl. ¶ 26), and that WWE's unfair business
  practices have "harmed MLW's ability to attract and acquire talent" (Compl. ¶ 72) in
  violation of the Sherman Act and California's Unfair Competition Law (Compl.
  ¶¶ 71-72, 79).  WWE also fails to disclose to the Court that on January 4, 2023,
  MLW offered to narrow this request to lawsuits, claims or complaints, threatened or
  actual, made by WWE wrestlers relating to the use or non-use of services given
  WWE's history of wrongfully poaching its competitors' wrestling talent.

8

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

# ARGUMENT

## I.  Legal Standard

Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense. . . ."  Fed. R. Civ. P. 26(b).  Federal Rule of Civil Procedure 26(c) governs stays of discovery.  *See San Francisco Tech. v. Kraco Enters. LLC,* No. 5:11-CV-00355 EJD, 2011 WL 2193397, at *1-2 (N.D. Cal. June 6, 2011) (Davila, J.) (noting that "good cause" must be shown under Rule 26(c) for a discovery stay to issue).  A motion to stay discovery in the Ninth Circuit requires the proponent of the stay to make a "strong showing." *Id.* at *2; *see also Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." (citation omitted)).

Consistent with the Ninth Circuit's instruction, courts within this district consider two factors to determine whether good cause exists to exercise their discretion and stay discovery pending resolution of a motion to dismiss: "(1) whether the pending motion is potentially dispositive of the entire case, and (2) whether the pending motion can be decided absent additional discovery." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018) (Davila, J.).  A protective order may issue only where the moving party satisfies both factors. *Kraco*, 2011 WL 2193397, at *2.

Contrary to WWE's argument, *Mujica v. Airscan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (Mot. at 7) does not provide any guidance on when a protective order should issue. *Mujica* simply states in *dicta* that a plaintiff must "satisfy the pleading requirements of Rule 8 before the discovery stage, not after it."  In its decision affirming dismissal of the complaint, the Ninth Circuit merely denied a request to remand to allow for the amendment of a complaint and obtain jurisdictional discovery at that stage, where—unlike here—the plaintiff admitted it could not meet "the specificity required by *Iqbal*, absent discovery" and any amendment would be futile. *See id.* at 592-93.

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

**II.     WWE Has Not Met Its "Heavy Burden" to Show Good Cause for a Blanket Stay of Discovery**

WWE's motion to stay discovery falls far short of satisfying its "heavy burden" to show "good cause" sufficient to depart from the presumption that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense.  WWE has done no more than argue in conclusory fashion that its motion to dismiss will succeed.  "Idle speculation does not satisfy Rule 26(c)'s good cause requirement.  Such general arguments could be said to apply to any reasonably large civil litigation."  *Gray*, 133 F.R.D. at 40.

Courts in this District have consistently rejected arguments that "[d]eferring discovery until there is an operative complaint will promote efficiency and judicial economy, by avoiding costly discovery on issues that may be rendered moot by the Court's decision on Defendants' motions to dismiss."  *See* Order at 3-4, *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-JST (N.D. Cal. Apr. 29, 2013), ECF 80.  Indeed, as the court in *Rheumatology Diagnostics* noted, "this argument does not constitute the showing of 'particular and specific need' required by the foregoing authorities.  It is an argument that any defendant facing a motion to dismiss could make.  As previously noted, the pendency of a motion to dismiss is not ordinarily a reason to stay discovery."  *Id.* at 4.

Moreover, even if it had demonstrated good cause, the balance of the public and private interests here weighs in favor of discovery proceeding.

A.     <u>WWE Has Failed To Satisfy The First Prong To Obtain A Stay Of Discovery</u>

WWE cannot establish the first prong of the test to demonstrate good cause to stay discovery—whether a pending motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed—because WWE's motion to dismiss is not dispositive of the entire case.  In order to meet this prong, a court must be satisfied that "the plaintiff will be unable to state a claim for relief," and must examine the merits of the motion to dismiss in some limited fashion.  *Optronic Techs., Inc.*, 2018 WL 1569811, at *1 (denying motion to stay that failed to show "the plaintiff will be unable to state a claim for relief" (citation

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1   omitted)); *see also Palantir Techs Inc. v. Abramowitz*, 2020 WL 13548687, at *2 (N.D. Cal. Jan.

2   30, 2020) ("In applying the two-factor test, the court must take a 'preliminary peek' at the merits

3   of the pending dispositive motion to assess whether a stay is warranted." (citation omitted)).  Here,

4   WWE's motion to dismiss does not raise challenges that can be resolved as a matter of law and

5   instead raises numerous factual disputes that are well beyond the four corners of the complaint.

6        As an initial matter, while WWE's motion to stay recognizes that it can only obtain such

7   relief if the Court determines that its motion to dismiss will dispose of the entire case (Mot. at 7),

8   WWE nonetheless has unilaterally refused to produce discovery in this case while its motion to

9   dismiss is pending.  (Decl. Ex. D at 1.)  WWE is wrong.  "Had the Federal Rules contemplated

10  that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would

11  contain a provision to that effect.  In fact, such a notion is directly at odds with the need for

12  expeditious resolution of litigation."  *Gray*, 133 F.R.D. at 40.

13       Turning to WWE's arguments regarding the strength of its motion to dismiss, MLW's

14  Opposition sets forth in detail the viability of its claims.  WWE contends that the complaint lacks

15  sufficient *factual* specificity as to the relevant market because it did not include an explanation of

16  the streaming and broadcast industries.  (Mot. at 9; MTD at 5-7.)  However, it is well-established

17  that the "definition of the relevant market is basically a fact question dependent upon the special

18  characteristics of the industry involved," *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,

19  676 F.2d 1291, 1299 (9th Cir. 1982), and thus not properly decided on a motion to dismiss,

20  "unless it is apparent from the face of the complaint that the alleged market suffers a fatal *legal*

21  defect," *Newcal Indus., Inc. v. Ikon Off. Sol.,* 513 F.3d 1038, 1045 (9th Cir. 2008) (emphasis

22  added).  Moreover, MLW has adequately alleged a relevant market, encompassing both a

23  geographic market and a product market:  "the national market for the sale of broadcasting rights

24  for professional wrestling programs to networks, cable and streaming services."  (Compl. ¶ 17.)

25  Contrary to WWE's assertion, this market is facially sufficient without reference to cross-elasticity

26  of demand, and need not encompass all forms of broadcast entertainment as those are unlikely to

27

28

MLW'S OPPOSITION TO WWE'S MOTION FOR PROTECTIVE ORDER
Case No. 5:22-cv-00179-EJD

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1   be reasonable economic substitutes in light of professional wrestling's unique audience. (MTD

2   Opp. at 8-9.)

3          WWE similarly asserts that the complaint failed to allege sufficient facts regarding WWE's

4   monopoly power as it did not include factual allegations to support WWE's possession of a

5   dominant share of the market and the existence of barriers to entry to the market.  (Mot. at 9; MTD

6   at 9-11.)  WWE's fact-dependent challenges cannot be decided at the pleading stage.  *See GSI*

7   *Tech., Inc. v. Cypress Semiconductor Corp.,* No. 11-cv-03613-EJD, 2012 WL 2711040, at *5

8   (N.D. Cal. July 6, 2012) (holding a complaint need not allege "these elements of the antitrust

9   claim . . . with specificity"); *see also Retrophin, Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d

10  906, 917 (C.D. Cal. 2014) (holding that whether barriers to entry in fact exist is not grounds for

11  dismissal on the pleadings).  Moreover, MLW's complaint plausibly alleged WWE's monopoly

12  power with direct evidence—alleging that WWE has restricted output and increased prices by

13  excluding MLW from favored platforms, such as Tubi and VICE, and by locking up major

14  networks and distribution channels, such as Fox Sports, USA Network, and Peacock, through

15  exclusive media rights agreements (MTD Opp. at 11-12; Compl. ¶¶ 10, 25, 27, 35-37, 52, 71-

16  73)—as well as circumstantial evidence, which included allegations of WWE's possession of 85%

17  of the market, and high barriers to enter the market (such as the substantial costs associated with

18  the production of professional wrestling shows, exclusive contracts locking up wrestling talent,

19  and the need for brand recognition) (MTD Opp. at 12-13; Compl. ¶¶ 21-26).  Similarly, contrary

20  to WWE's contention (Mot. at 9), MLW also plausibly alleged antitrust injury because WWE's

21  actions to lock up distribution networks and talent prevent MLW "from gaining a foothold in the

22  market," which "is not only injurious to the potential competitor but also to competition in

23  general."  *LePage's, Inc. v. 3M*, 324 F.3d 141, 159 (3d Cir. 2003).  (*See also* MTD. Opp. at 18-

24  19.)  WWE's challenge to the factual allegations of the complaint is not dispositive given the

25  Court's obligation to accept all allegations as true and draw "all reasonable inferences in favor of

26  the plaintiff" at the pleading stage.  *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

27

28

MLW'S OPPOSITION TO WWE'S MOTION FOR PROTECTIVE ORDER
Case No. 5:22-cv-00179-EJD

WWE's motion to dismiss is also not dispositive of MLW's state law claims.  WWE's arguments regarding MLW's claim for intentional interference with contractual relations—based on WWE's interference with MLW's licensing agreement with Tubi—are inherently factual and must be resolved after discovery and not at the motion to dismiss stage.  For example, WWE's assertion (Mot. at 9) that it is "wholly implausible" that "WWE would jeopardize hundreds of millions of dollars in rights fees and breach its own contract with Fox in order to keep MLW off a streaming service" or that "Fox [would] capitulat[e] to any such threat . . . in light of its ability to enforce its contract with WWE" is by its very nature a factual dispute.  It is also a *non-sequitur*: MLW does not allege that WWE breached its contract with Fox, but rather that Fox could "lose WWE's business or preferred content" if it did not acquiesce.  (Compl. ¶ 45.)  Furthermore, MLW's complaint sufficiently states a claim for intentional interference with contractual relations by alleging that WWE knew of and interfered with a licensing agreement between Tubi and MLW by pressuring Tubi and Fox executives to terminate the agreement, causing harm to MLW. (Compl. ¶¶  38-59). These allegations are sufficient under Rule 8 and do not require, as WWE claims, the identification of the specific names of individuals WWE pressured or the contents of Tubi's termination letter.  (MTD Opp. at 20-21.)

WWE's challenge to MLW's intentional interference with prospective advantage claim (Mot. at 10) is likewise predicated on inherently factual arguments.  WWE's suggestion that "some other intervening fact" such as MLW's viewership "was the proximate cause for VICE's decision to abandon negotiations," and not, as MLW alleged, WWE's interference, assumes facts beyond MLW's complaint and raises a factual issue, as "[proximate cause] questions are all factual questions, which [courts] cannot resolve on a Rule 12(b)(6) motion."  *Newcal*, 513 F.3d at 1055.

WWE's arguments regarding MLW's Unfair Competition Law ("UCL") claim (Compl. ¶¶ 78-81) fail not only because MLW adequately pleads the foregoing tort and antitrust claims against WWE, but also because the allegations of WWE's monopolistic conduct are sufficient to state a UCL claim even absent a Section 2 violation.  (*See* MTD Opp. at 23.)  Additionally,

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

13

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1  contrary to WWE's assertion (Mot. at 10), MLW has statutory standing to assert its UCL claim

2  because MLW alleges sufficient California contacts and harm to its relationship with Tubi, a

3  California company (Compl. ¶¶ 14, 40, 46, 48, 54); and MLW also has Article III standing to

4  assert its UCL claim because it seeks to enjoin further unfair business practices by WWE,

5  including WWE's ongoing anticompetitive scheme to restrict competitors' access to wrestlers,

6  venues, and broadcast platforms (Compl. ¶¶ 11-12, 24-25, 34-37, 44-47, 70, 76, 81).  (*See* MTD

7  Opp. at 23-25.)

8      Accordingly, WWE has not met the first requisite factor for a motion to stay discovery

9  pending a motion to dismiss.

10      B.    WWE Has Failed to Satisfy the Second Prong to Obtain A Stay of Discovery

11      WWE cannot satisfy the second prong—*i.e.,* whether its motion to dismiss can be decided

12  without further discovery.  As set forth above, WWE's motion raises issues that require discovery

13  and are not properly decided on a motion to dismiss.  For example, in order to prove the relevant

14  market for its Sherman Act claim, MLW seeks discovery as to the consumer demographics for

15  professional wrestling and the level of cross-elasticity among that consumer base.  *See, e.g.*, ECF

16  51-2 ("RFP") at Request Nos. 30-31, 33-34.  Further, MLW seeks information that is supportive

17  of its antitrust claims and solely in WWE's possession, such as WWE's exclusive contracts with

18  talent and exclusive contracts with major networks and distribution channels such as Fox Sports,

19  USA Network and NBCUniversal (which owns Peacock and USA Network).  *See, e.g.*, RFP at

20  Request Nos. 15, 29.  *See also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482,

21  (1992) ("Where the definition of relevant market depends on 'factual inquiry into the "commercial

22  realities" faced by consumers' it is an issue for the jury to decide."); *High Tech. Careers v. San

23  Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) ("The district court properly found that it

24  could not determine the relevant market on a motion for summary judgment.").

25      C.    The Balance of Public and Private Interests Weighs Against a Stay of Discovery

26      Even if the Court were to consider WWE's motion to dismiss dispositive for the purposes

27  of the two-factor test, the Court still has a countervailing interest in promoting judicial efficiency

28

14

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

that would militate against a stay of discovery.  "If, after examining the basis for good cause, a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Kraco*, 2011 WL 2193397 at *2 (citations omitted).

WWE argues (Mot. at 8) that "[i]f discovery proceeds in the present case, WWE may be forced to incur discovery costs for a second time in state court should this Court dismiss the state law claims for lack of subject matter jurisdiction."  However, discovery relevant to those claims would not be duplicative as it would still be used in state court proceedings.  *See*, *e.g.*, RFP Nos. 4-7, 11-13, 35.

The discovery sought would also be relevant "to prepare an amended complaint."  *See Kraco*, 2011 WL 2193397 at *3.  Indeed, Ninth Circuit law weighs in favor of granting leave to amend, and MLW should therefore be afforded an opportunity to amend its complaint even if dismissal were granted.  *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107-08 (9th Cir. 2003) ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." (citation omitted)); *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts" (citation omitted)).

D.   <u>WWE Cannot Stay Discovery Based on Supposed Costs It Claims That It Will Incur</u>

The Court should also reject WWE's argument (Mot. at 7) that discovery should be stayed because "discovery in antitrust cases tends to be broad, time-consuming and expensive."  There is no automatic stay of discovery in antitrust cases.  As this Court has noted: "the costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint."  *Optronic*, 2018 WL 1569811, at *2

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1 (quoting *Top Rank, Inc. v. Haymon*, No. CV 15-4961-JFW (MRWx), 2015 WL 9952887 (C.D.

2 Cal. Sept. 17, 2015)).

3       Further, WWE's estimate of its initial costs "to collect, review, and produce" documents

4 responsive to MLW's initial requests (Mot at 7-8) is necessarily speculative as the parties have not

5 yet negotiated search terms and WWE fails to mention or account for MLW's proposals to narrow

6 its requests, which MLW made during the parties' January 4 meet and confer (*see* Decl. ¶ 28).[3]

7 Additionally, WWE's reliance on a decade-old report—which WWE summarily "adjust[s] for

8 inflation" and without accounting for changes or advances in antitrust discovery in the decade

9 since—is unfounded.

10       WWE's citations to *Arcell v. Google LLC*, 2022 WL 16557600 (N.D. Cal. Oct. 31, 2022)

11 and *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) are also inapposite

12 because neither of those cases involved a motion to stay discovery that was filed with a pending

13 discovery deadline and, as such, did not involve stays that prejudiced plaintiffs.  Further, unlike

14 *Arcell*, this case involves a single plaintiff and defendant, and unlike *Netflix*, this case "is not a

15 sprawling multidistrict litigation or a class action."  *Optronic*, 2018 WL 1569811, at *2

16 (distinguishing *Netflix* from the instant antitrust case).  In further contrast to MLW's RFPs, in

17 *Arcell*, the plaintiffs also immediately sought depositions of apex witnesses such as "Defendants

18 Tim Cook, Sundar Pichai, Eric Schmidt, and other Apple and Google executives."  *Arcell*, 2022

19 WL 16557600, at *1.  Moreover, in *Netflix*, the Court actually permitted certain "narrowly-

20 tailored" discovery to proceed—despite granting the motion to dismiss (with leave to amend)—

21 because, like here, "the players are known at least in a general sense" and "[t]he subject matter of

22

23 _____

24 [3] WWE's insinuation that MLW seeks access to "WWE's most sensitive, competitive

25 information" for improper purposes (Mot. at 6, 8) is likewise made in bad faith.  WWE fails to

26 mention that the parties' negotiated protective order limits to whom competitively sensitive

27 information may be disclosed (*see* Decl. ¶ 30) and that WWE can designate competitively

28 sensitive information so as to prevent MLW's employees from accessing it.

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1    the communications relevant to plaintiffs' [] allegations is narrow as well."  506 F. Supp. 2d at

2    321.  MLW's allegations and RFPs are far from the "expansive fishing expedition" WWE claims

3    (Mot. at 2), but rather specifically identify the key players, including the competitors, major

4    networks and distribution channels, relevant to the allegations.  Moreover, MLW has proposed to

5    narrow its tailored RFPs further in an effort to compromise and address WWE's concerns.

6    Nothing in these requests justifies the blanket stay of discovery that WWE seeks.

7         "Indeed, district courts look unfavorably upon such blanket stays of discovery."  *Mlejnecky*

8    *v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011) (denying motion

9    for a protective order to stay discovery pending resolution of a motion to dismiss).  Rather, the

10   proper course of action in these circumstances is to meet and confer in good faith to negotiate the

11   scope of requests instead of outright shielding all discovery.  *See id.* at 10 n.15 (noting "to the

12   extent that the parties believe that some of the discovery propounded by plaintiff will result in the

13   disclosure of confidential or proprietary business information, the undersigned encourages the

14   parties to discuss and enter into a private stipulated protective order rather than bringing the matter

15   before the court in the first instance").  WWE has only engaged in one meet and confer session

16   with MLW on January 4, during which MLW agreed to limit the scope of eight requests and

17   agreed to further discussions on search terms so that WWE can effectively search and collect

18   responsive documents.  (Decl. ¶ 28.)  Because WWE has a remedy for the hypothetical concerns it

19   posits, the balance of the public and private interests weighs against a blanket stay of all discovery.

20        E.    WWE's Argument That A Stay Is Warranted Because The Court Lacks Subject
              Matter Jurisdiction Over This Dispute Is Meritless

21

22        WWE contends (Mot. at 8-9) that a stay is warranted because the Court could dismiss

23   MLW's Sherman Act claim and then decline to exercise supplemental jurisdiction over MLW's

24   state law claims.  However, as discussed above, the mere filing of a motion to dismiss is

25   insufficient to establish good cause for a stay of discovery.  *See Gray*, 133 F.R.D. at 40; *Optronic*,

26   2018 WL 1569811, at *1-2 (denying motion to stay prior to decision on motion to dismiss antitrust

27   complaint and noting "[t]hough it is true that one possible outcome is dismissal of the Amended

28

17

Complaint without leave to amend, it is also possible that new reasons for dismissal are found and leave to amend is permitted").  WWE's reliance on *Malley* is likewise meritless.  In *Malley* this Court stayed discovery *after* granting the defendants' motion to dismiss and granting leave for plaintiff to amend a *second* time.  *Malley v. San Jose Midtown Dev. LLC*, No. 5:20-cv-01925-EJD, 2020 WL 5877575, at *8 (N.D. Cal. Oct. 2, 2020).  Here, the Court has not granted WWE's motion to dismiss, which remains *sub judice*.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny WWE's motion for protective order.

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

MLW'S OPPOSITION TO WWE'S MOTION FOR PROTECTIVE ORDER
Case No. 5:22-cv-00179-EJD

1    Dated:  January 19, 2023

2                                                    Respectfully submitted,

3

4                                                    */s/ Jason S. Takenouchi*

5                                                    JASON S. TAKENOUCHI (SBN 234835)
                                                     KASOWITZ, BENSON TORRES LLP
6                                                    101 California Street, Suite 3000
                                                     San Francisco, California 94111
7                                                    Telephone:    (415) 421-6140
                                                     Facsimile:    (415) 398-5030
8                                                    jtakenouchi@kasowitz.com

9                                                    MARC E. KASOWITZ (*pro hac vice*)
                                                     CHRISTINE A. MONTENEGRO (*pro hac vice*)
10                                                   NICHOLAS A. RENDINO (*pro hac vice*)
                                                     KASOWITZ BENSON TORRES LLP
11                                                   1633 Broadway
                                                     New York, New York 10019
12                                                   Telephone:    (212) 506-1700
                                                     Facsimile:    (212) 506-1800
13                                                   mkasowitz@kasowitz.com
                                                     cmontenegro@kasowitz.com
14                                                   nrendino@kasowitz.com

15

16                                                   *Attorneys for Plaintiff MLW Media LLC*

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ BENSON TORRES LLP
101 California Street, Suite 3000
San Francisco, California 94111

19

MLW'S OPPOSITION TO WWE'S MOTION FOR PROTECTIVE ORDER
Case No. 5:22-cv-00179-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 19th day of January 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Jason S. Takenouchi*
Jason S. Takenouchi

20

MLW'S OPPOSITION TO WWE'S MOTION FOR PROTECTIVE ORDER
Case No. 5:22-cv-00179-EJD