Daniel W. Fox (SBN 268757)
daniel.fox@klgates.com
Jerry S. McDevitt (*pro hac vice*)
jerry.mcdevitt@klgates.com
Christopher S. Finnerty (*pro hac vice*)
christopher.finnerty@klgates.com
Morgan T. Nickerson (*pro hac vice*)
morgan.nickerson@klgates.com
Derek W. Kelley (*pro hac vice*)
derek.kelley@klgates.com

K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, CA 94103
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Counsel for Defendant*
World Wrestling Entertainment, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MLW MEDIA LLC, | Case No. 5:22-cv-00179-EJD |
| Plaintiff, | **DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER** |
| v. | |
| WORLD WRESTLING ENTERTAINMENT, INC., | Hearing Date: May 11, 2023 |
| | Time: 9:00 AM |
| Defendant. | Courtroom: Courtroom 4 |
| | Judge: Hon. Edward J. Davila |

314516904.7

1

## I.   **INTRODUCTION**

2       MLW is desperate for premature discovery in this action because, as it admits, "[t]he

3   discovery sought would [ ] be relevant to prepare an amended complaint." (ECF No. 54, "Opp." at

4   15) (internal quotations omitted). Well aware that its complaint is facially deficient, MLW resorts

5   to twisting the standard for a stay of discovery beyond its plain language and otherwise fills its

6   Opposition with blatantly false accusations of bad faith by WWE in order to obtain that discovery.

7   Such arguments do not stand up to scrutiny.

8       ***First***, WWE unquestionably satisfies the requirement for a stay of discovery articulated in

9   *Arcell v. Google, LLC*, 2022 WL 16557600 (N.D. Cal. Oct. 31, 2022). As in *Arcell*, this is an

10   antitrust case where a pending motion to dismiss *may* dispose of the entire case, and the Court can

11   decide the pending motion without further discovery. MLW misconstrues the *Arcell* standard to

12   require that a motion to dismiss must, definitively, dispose of a case. But that is not the standard

13   expressed by this Court. Rather, this Court granted the motion in *Arcell* because defendants raised

14   "numerous significant challenges" sufficient to make their motion "potentially dispositive." *Id.*

15   WWE similarly raises numerous significant challenges, and its motion to dismiss is absolutely

16   "potentially dispositive" of the entire case.

17       ***Second***, WWE established good cause for a stay of discovery. As this Court is aware,

18   antitrust discovery is as costly and burdensome as ever. MLW is demanding that WWE collect,

19   review, store, and produce documents responsive to ***47*** requests for ***sixteen (16) initial*** custodians,

20   which include numerous C-suite executives as well as individuals with no clear connection to a

21   single allegation in MLW's complaint. Based on an unrebutted scholarly analysis of discovery costs

22   and on WWE's attorneys' experience, it will cost WWE approximately $3 million to respond to

23   these requests – money that would be wasted if this Court grants WWE's motion to dismiss. In

24   contrast, MLW will suffer no prejudice from waiting for a ruling on the pending motion to dismiss,

25   as ***WWE will stipulate to extend fact discovery*** pending a ruling by this Court on the motion to

26   dismiss.

27

28

314516904.7

*Third*, MLW's accusations of bad faith conduct by WWE are baseless. MLW cannot identify a single federal or local rule that WWE failed to satisfy. Contrary to MLW's assertions, it is in fact MLW that has delayed agreement on a stipulated protective order and ESI protocol by refusing to negotiate and seeking, in relation to the ESI protocol, a requirement that WWE agree to collect and produce documents for *sixteen (16)* initial custodians. And to the extent MLW believes WWE had filed a motion for protective order sooner, it in fact filed this motion as soon as an agreement with MLW permitted.

For these reasons discussed further below, the Court should grant WWE's Motion for Protective Order.

## II.   WWE Unquestionably Satisfies the Requirements for a Stay of Discovery

This Court articulated a simple standard for granting a stay of discovery in *Arcell*. The relevant questions are: "(1) will the motion dispose of the entire case (or at least the issue at which discovery is aimed)? and (2) can the motion be decided without further discovery?" *Arcell*, 2022 WL 16557600, at *1.

That standard is plainly met here. First, WWE's Motion to Dismiss has been *sub judice* since May 2022. WWE moved to dismiss the total of MLW's complaint. If granted in full, this case will be disposed of. If granted only as to MLW's antitrust claim, this case will also be disposed of, as the court would lack jurisdiction over non-diverse parties for state law claims.  Second, WWE's Motion to Dismiss is based entirely on the allegations contained in the complaint and their plausibility. No discovery is required to adjudicate the Motion to Dismiss, and neither WWE nor MLW raised the prospect of using any discovery to resolve that motion.

MLW misconstrues the standard and argues that the Court should grant this motion only if WWE's motion to dismiss will definitely succeed. Yet the standard does not require that a motion to dismiss be destined to dispose of a case; rather the Court only requires that it "*may* dispose of the entire case." *Arcell* 2022 WL 16557600, at *1 (emphasis added). Indeed, if MLW's interpretation of the *Arcell* standard were correct, a court would never stay discovery while a motion to dismiss is pending because no such motion could ever be said to be dispositive until the presiding judge rules on it. That cannot be the case. In fact, the Court granted a stay of discovery in *Arcell*

314516904.7

1  merely because defendants raised "numerous significant challenges" sufficient to make their

2  motion "potentially dispositive." *Id.* Here, too, WWE raised numerous significant challenges –

3  indeed, many of the same challenges raised in *Arcell* – and, as a result, WWE's motion to dismiss

4  is also "potentially dispositive."

5  　　　MLW's twisting of this standard puts the cart before the horse. "The purpose of F.R.Civ.P.

6  12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting

7  themselves to discovery." *Arcell*, 2022 WL 16557600, at *1 (internal citations omitted). WWE has

8  chosen to challenge the legal sufficiency of MLW's complaint. Thus, it should not be subject to

9  discovery.

10  **III.　MLW Does Not Refute the Good Cause to Stay Discovery**

11  　　　　**A.  MLW Does Not Seriously Contest the Cost of Antitrust Discovery**

12  　　　This Court and all antitrust litigators are well aware that antitrust discovery is uniquely

13  expensive. WWE's declaration in support of its Motion for Protective Order as well as the scholarly

14  analysis of antitrust discovery costs support this commonly understood fact: "the costs of discovery

15  in [antitrust] actions are prohibitive." *Arcell*, 2022 WL 16557600, at *1. Thus, it is not surprising

16  that, just a few months ago, this Court held that the "broad, time-consuming and expensive" nature

17  of antitrust discovery provided "good cause" to stay it. *Id.* Here, WWE's attorneys believe that it

18  will cost approximately $3 million to collect, review, store, and produce documents responsive to

19  MLW's expansive discovery requests. That figure does not even include the cost to review

20  materials responsive to the ***eight (8)*** third-party subpoenas that MLW recently served.

21  　　　MLW does not seriously contest the cost associated with antitrust discovery. Its only

22  response is that the article cited by WWE may not account for purported "changes or advances in

23  antitrust discovery." Opp. at 16. Of course, MLW does not say what those cost-controlling advances

24  are, and it provides no scholarly analysis of its own to suggest that antitrust discovery is anything

25  but as broad, time-consuming, and expensive as ever.

26

27

28

314516904.7

1

2

**B.  The Cost to Respond to MLW's Discovery is not Speculative, and MLW's Discovery is not Limited**

3  Nor can MLW seriously argue that the cost to collect, review, store, and produce documents

4 responsive to its requests is "speculative." MLW demands documents for sixteen (16) custodians

5 in response to 47 requests for production. MLW argues that the parties have not yet negotiated the

6 scope of this discovery, and thus it may be narrower than WWE now believes. Yet, when MLW

7 learned of WWE's intent to file this motion, MLW became determined to file a competing motion

8 with Mag. Judge van Keulen to force WWE to produce documents responsive to its First Set of

9 Document Requests *as written*. Other than a January 4, 2023 meet and confer to discuss a small

10 number of the requests (which was not the scheduled purpose of that meet and confer and of which

11 MLW provided no notice), MLW has made no further attempt to negotiate discovery, and it has

12 refused to consider reducing the number of initial custodians from sixteen (16).

13  To be sure, there is nothing "limited" about MLW's demands. While true MLW has not yet

14 noticed depositions, it seeks document discovery from numerous executives, including WWE's

15 executive chairman, Vince McMahon, its former co-CEO, Stephanie McMahon, its current CEO,

16 Nick Khan, its current Chief Content Officer, Paul Levesque; numerous other former and current

17 employees, and even WWE's *outside* counsel, Jerry McDevitt. Furthermore, MLW has already

18 served eight (8) third-party subpoenas, the recipients of which include WWE's business partner

19 (FOX), a cable network (VICE), two streaming platforms (FITE and Tubi), an arena (Madison

20 Square Garden) and two alleged competitors to MLW and WWE (Ring of Honor and New Japan

21 Pro Wrestling). Shockingly, and clearly in line with its goal of using discovery as a means to craft

22 a complaint, MLW has demanded that recipients respond to its third-party discovery requests within

23 30-days of sending them.

24  MLW's proposed scope of discovery is, contrary to its assertion, in fact far beyond the

25 scope of discovery sought in *Arcell.* There, plaintiffs only served seven (7) requests for production

26

27

28

314516904.7

related to specific contracts or communications among certain individuals.[1] MLW, by contrast, seeks discovery about every facet of WWE's business, from its negotiation of broadcast rights agreements to its booking of arenas, to its hiring decisions to its defense of other unrelated litigations. Much of these inquiries have no discernable connection to MLW's causes of action. Unlike in *In re Netflix Antitrust Litig.*, which allowed for some limited discovery, there is nothing limited in scope here.[2] 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007).

### C. WWE Faces Substantial Prejudice from Premature Discovery, and MLW Will Suffer No Legitimate Prejudice from a Stay of Discovery

Because of MLW's expansive discovery demands, WWE faces substantial prejudice from premature discovery. As explained in its motion, it will cost WWE approximately $3 million to collect, review, store, and produce documents for so many custodians in response to so many requests. Such expenses will be wasted if this Court subsequently grants the pending Motion to Dismiss.

MLW, by contrast, cannot claim any true prejudice from staying discovery at this juncture. MLW contends that a stay of discovery would leave it too little time to conduct fact discovery after the scheduled May 11, 2023 hearing on this motion. MLW also argues that *Arcell* is not controlling because, there, the Court had not entered a case management order setting discovery deadlines. Opp. at 3. However, as WWE expressed to Mag. Judge van Keulen, it is ***prepared to stipulate to extend discovery*** for however long the motion to dismiss remains pending.

The only harm to MLW from a stay of discovery is that it will not have access to WWE documents to amend its facially deficient pleadings. Opp. at 15 ("The discovery sought would also

---

[1] MLW incorrectly presents the issue in *Arcell* as the plaintiffs' demand to take depositions of apex witnesses. Opp. at 16. However, the Court never framed any deponent as an apex witness, and it expressed concern with plaintiffs' interrogatories and requests for production as well as its notice for depositions.

[2] *In re Netflix* also predates the Ninth Circuit's ruling in *Mujica* that a plaintiff must first satisfy Rule 8 before proceeding to discovery.

314516904.7

be relevant to prepare an amended complaint.") (internal citations omitted). But case law is clear that a plaintiff must "satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." *Mujica v. Airscan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (emphasis in original).[3] Indeed, "discovery *follows* the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." *Id.* at n.7 (internal citations omitted) (emphasis in original).

In truth, however, no amount of discovery could ever produce an antitrust complaint able to survive Rule 8. The core of MLW's monopolization claims is preposterous even if the Court accepts as true every non-conclusory fact alleged in MLW's complaint. WWE produces a mere five hours of weekly live content for USA Network and a mere two hours of weekly live content for FOX, and it produces only one live special (a "premium live event") for the Peacock streaming platform approximately each month. Thus, WWE, as a producer of so little content for only two channels and one streaming platform, could never plausibly exclude MLW from all or even from a substantial number of networks, cable channels, and streaming services, of which there are hundreds with which WWE has no relationship whatsoever.

Rather than fish for some support to revive its moribund complaint, MLW should withdraw its suit altogether. MLW recently touted that it secured a broadcast rights deal with the cable channel REELZ. According to MLW's owner Court Bauer, REELZ ranks in the top 30 networks

---

[3] Contrary to MLW's claim, *Mujica*'s ruling is not *dicta*, but an acknowledgment of Supreme Court precedent. "To the extent that any of [prior] decisions suggest[] that courts retain discretion to permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, it is simply incompatible with *Iqbal* and *Twombly*." *Mujica*, 771 F.3d at n.7. Furthermore, MLW cannot be correct that this ruling only applies *after* a plaintiff's initial complaint is dismissed. If true, a plaintiff could impose burdensome antitrust discovery for months or a year while a defendant awaits a ruling on a motion to dismiss. That flies directly against the Supreme Court's ruling in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009): "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

1   each week. As he said, "Just to give the people kind of perspective, USA [home of WWE RAW]

2   and TNT/TBS [home of AEW], they all ho[v]er around the number 11-14 mark in rankings. AXS

3   [home of Impact Wrestling] is like 98-99 and VICE [MLW's prospective home per the complaint]

4   is like 77. And BEIN [MLW's former home] was ranked 127, so we leaped literally 100 channels."

5   (Exhibit A). MLW's success in the marketplace belies its allegation that WWE can or ever has

6   excluded it from selling its broadcast rights. Its complaint lacks even a faint basis in fact.

7   **IV.   MLW's Accusations of Bad Faith are Unfounded**

8        WWE is hesitant even to defend itself against MLW's baseless accusations of bad faith.

9   Opp. at 3-6. WWE has, to its knowledge, complied with every applicable federal and local rule,

10  and MLW has not cited a single rule that WWE has violated.

11       MLW claims that WWE delayed entry of a protective order and ESI protocol. Both parties,

12  however, ultimately agreed to a protective order which Mag. Judge van Keulen entered on January

13  5, 2023. ECF No. 51. Contrary to MLW's implication, it continued to make substantive changes to

14  the document until right before filing. As for the ESI protocol, the only point of contention has been

15  MLW's demand that the ESI protocol require WWE to collect, review, store, and produce

16  documents for sixteen (16) initial custodians. WWE's view is that the number of initial custodians

17  is a discovery dispute and not appropriate for an ESI protocol. WWE has been willing to stipulate

18  to an ESI protocol without this improper obligation since January 3, 2023.

19       Finally, MLW contends that WWE should have somehow moved to stay discovery sooner.

20  WWE did not know, and could not know, the scope of discovery that MLW would seek, however,

21  until it served its requests on October 17, 2022. In exchange for an extension to December 23, 2022

22  to serve responses and objections – which was necessary because of the holidays – MLW demanded

23  that WWE agree not to stay discovery until after that date. WWE then offered a meet and confer

24  for a proposed stay of discovery on December 23, 2022, which was ultimately held on January 4,

25  2023. (Exhibit B). Thus, WWE moved to stay discovery as soon as possible.

26

27

28

314516904.7

1    Dated: January 26, 2023                      K&L GATES LLP

2

3                                                 By: *Christopher S. Finnerty*

4

5                                                 Daniel W. Fox (SBN 268757)
                                                  daniel.fox@klgates.com
6                                                 Jerry S. McDevitt (*pro hac vice*)
                                                  jerry.mcdevitt@klgates.com
7                                                 Christopher S. Finnerty (*pro hac vice*)
                                                  christopher.finnerty@klgates.com
8                                                 Morgan T. Nickerson (*pro hac vice*)
                                                  morgan.nickerson@klgates.com
9                                                 Derek W. Kelley (*pro hac vice*)
                                                  derek.kelley@klgates.com
10                                                K&L GATES LLP
                                                  Four Embarcadero Center
11                                                Suite 1200
                                                  San Francisco, CA  94103
12                                                Telephone: (415) 882-8200
                                                  Facsimile:  (415) 882-8220
13

14                                                *Counsel for Defendant*
                                                  World Wrestling Entertainment, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

314516904.7