UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MLW MEDIA LLC,

          Plaintiff,

    v.

WORLD WRESTLING
ENTERTAINMENT, INC.,

        Defendant.

Case No.   22-cv-00179-EJD

**ORDER GRANTING WWE'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING AS MOOT WWE'S MOTIONS FOR PROTECTIVE ORDER AND ADMINISTRATIVE MOTION FOR STATUS CONFERENCE**

Re: ECF Nos. 19, 51, 57

Before the Court is Defendant World Wrestling Entertainment, Inc.'s ("WWE") Motion to Dismiss Plaintiff MLW Media LLC's Complaint. *See* ECF No. 19 ("Mot."). In addition to the Motion to Dismiss, WWE has filed a Motion for Protective Order and an Administrative Motion for Status Conference Regarding Discovery Schedule. ECF Nos. 51, 57. The Court finds each of the three motions appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). *See* ECF No. 41 (taking the Motion to Dismiss under submission). For the reasons discussed below, the Court GRANTS the Motion to Dismiss with leave to amend. The Court DENIES as moot the Motion for Protective Order and the Administrative Motion.

## I.     BACKGROUND

Plaintiff MLW Media LLC ("MLW") is a professional wrestling company that is in "the business of promoting sporting events, particularly live events, programming, and digital content related to professional wrestling." Complaint, ECF No. 1 ("Compl.") ¶¶ 2, 13. According to

United States District Court
Northern District of California

1  MLW, it competes with WWE and non-parties All Elite Wrestling ("AEW") and Impact Wrestling

2  ("Impact") for distribution channels—*e.g.*, television networks, cable, and streaming services—for

3  professional wrestling content. *Id.* ¶¶ 10, 17–18. MLW describes itself as an "innovative startup,"

4  and by contrast alleges that Defendant WWE "has been in the entertainment business promoting

5  wrestling and sports entertainment for decades." *Id.* ¶¶ 14, 30. WWE is the dominant player and

6  has used its media rights contracts with major networks and distribution channels to lock in those

7  networks to only offer WWE content and to give WWE content more favorable time slots and

8  marketing opportunities. *Id.* ¶ 27.

9  MLW alleges that WWE used its stature to harm MLW's business prospects on at least

10  two occasions. In June 2021, upon learning of a television broadcasting deal between MLW and

11  VICE TV ("VICE") to air MLW's archival content, WWE's Senior Vice President informed a

12  VICE executive that WWE's owner wanted VICE to cease airing MLW's content. Compl. ¶¶ 34–

13  35. As a result of this call, MLW asserts, VICE aired only a single MLW archival program and

14  stopped engaging in business negotiations about airing new MLW content. *Id.* ¶ 36. Similarly, in

15  August 2021, a different WWE executive exerted pressure on an executive of Tubi—a streaming

16  service owned by Fox Corporation—and caused Tubi to terminate an agreement with MLW. *Id.*

17  ¶¶ 7, 45. According to MLW, the terms of the agreement greatly increased MLW's valuation,

18  strengthened its brand recognition, including among viewers of Fox television and NFL football,

19  and would have made MLW more attractive to new wrestling talent. *Id.* ¶ 41. After executing the

20  agreement with Tubi, MLW ceased talks with other potential partners and began preparing two

21  live events. *Id.* ¶¶ 42–43. But on the same day that WWE contacted Tubi about its agreement

22  with MLW, Tubi wrote to MLW and purported to terminate the agreement, despite an agreement

23  to issue a joint press release announcing the deal the very next day. *Id.* ¶¶ 44–45.

24  Based on these acts by WWE, the Complaint asserts claims for intentional interference

25  with contractual relations; intentional interference with prospective economic relations; violation

26  of Section 2 of the Sherman Antitrust Act; and violation of California's Unfair Competition Law

27
28  Case No.: 22-cv-00179-EJD
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT.
ORDER AND ADMIN. MOT. FOR STATUS CONF.

United States District Court
Northern District of California

1   ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*  Compl. ¶¶ 53–81.

2   ## II.   LEGAL STANDARD

3        A complaint must contain "a short and plain statement of the claim showing that the

4   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that falls short of the Rule 8(a)

5   standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R.

6   Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in the

7   complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

8   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

9   facially plausible when it "allows the court to draw the reasonable inference that the defendant is

10   liable for the misconduct alleged."  *Id.*  The Court "accept[s] factual allegations in the complaint

11   as true and construe[s] the pleadings in the light most favorable to the nonmoving

12   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

13   However, the complaint "may not simply recite the elements of a cause of action, but must contain

14   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

15   defend itself effectively."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting

16   *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  In

17   evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint,

18   documents incorporated into the complaint by reference, and matters which are subject to judicial

19   notice.  *See Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir.

20   2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

21   ## III.   DISCUSSION

22        The only claim over which the Court has original subject matter jurisdiction is the alleged

23   violation of Section 2 of the Sherman Act.  Compl. ¶ 15; 28 U.S.C. § 1337.  The Court therefore

24   addresses MLW's antitrust claim before the state law claims.

25   ### A.   Sherman Act Claim

26   WWE argues that MLW's Sherman Act claim should be dismissed because MLW does not

27

28   Case No.: 22-cv-00179-EJD
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT.
ORDER AND ADMIN. MOT. FOR STATUS CONF.

United States District Court
Northern District of California

1  plausibly allege (1) a relevant market; (2) monopoly power; or (3) antitrust injury.  Mot. 4.

2                                    **1.    Relevant Market**

3        "Antitrust law requires [an] allegation of both a product market and a geographic

4  market." *Newcal Indus., Inc. v. Ikon Office Sol.,* 513 F.3d 1038, 1045 n.4 (9th Cir. 2008).  "[T]he

5  plaintiff must allege both that a 'relevant market' exists and that the defendant has power within

6  that market."  *Id.* at 1044; *see also Tanaka v. Univ. of S. Cal.,* 252 F.3d 1059, 1063 (9th Cir.

7  2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act

8  claim.").  Although the definition of a relevant market for antitrust purposes is typically a factual

9  inquiry, an antitrust claim may be dismissed under Rule 12(b)(6) if the plaintiff's relevant market

10  definition is "facially unsustainable."  *Newcal*, 513 F.3d at 1045 (citing *Queen City Pizza, Inc. v.*

11  *Domino's Pizza, Inc.,* 124 F.3d 430, 436–37 (3d Cir.1997)); *see also Apple, Inc. v. Psystar*

12  *Corp.,* 586 F. Supp. 2d 1190 (N.D. Cal. 2008).

13        "The principle most fundamental to product market definition is 'cross-elasticity of

14  demand' for certain products or services, a measure of interchangeability or substitutability of

15  related products." *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291–92 (9th Cir. 1979).  That is, a

16  relevant product market must "encompass the product at issue as well as all economic substitutes

17  for the product." *Newcal*, 513 F.3d at 1045.  "Where the plaintiff fails to define its proposed

18  relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of

19  demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable

20  substitute products even when all factual inferences are granted in plaintiff's favor, the relevant

21  market is legally insufficient and a motion to dismiss may be granted."  *Queen City Pizza,* 124

22  F.3d at 436; *see also Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022) ("[W]here

23  the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable

24  interchangeability and cross-elasticity of demand, . . . the relevant market is legally insufficient.")

25        MLW alleges that the relevant antitrust market is the "the national market for the sale of

26  broadcasting rights for professional wrestling programs to networks, cable and streaming

27

28

*United States District Court*
*Northern District of California*

1   services." Compl. ¶ 17.  WWE does not dispute the geographic market of the United States.  *See*

2   Mot. 5–7.  WWE does, however, argue that MLW has not plausibly alleged facts supporting its

3   proposed product market, particularly due to the lack of allegations about the structure of the

4   television and streaming industries, the production of professional wrestling programming, and the

5   unavailability of reasonably interchangeable alternatives to professional wrestling content.  *Id.* at

6   6.  In response, MLW asserts that it is not required to include express allegations regarding the

7   cross-elasticity of demand or the absence of reasonably interchangeable products, that products

8   with potentially interchangeable substitutes can nonetheless constitute a relevant antitrust

9   submarket, and that WWE's arguments "at most raise[] factual issues that cannot be decided on a

10  motion to dismiss."  Opp'n 8–9.

11          MLW's argument that it need not "allege cross-elasticity of demand and the absence of

12  'reasonably interchangeable alternatives' to professional wrestling programming" is unavailing.

13  Opp'n 9.  It is true that there is no mandate that a plaintiff include in her complaint the exact

14  phrases "cross-elasticity of demand" or "reasonably interchangeable alternatives"—in fact, using

15  these phrases is neither necessary nor sufficient to survive a motion to dismiss.  *See Nat'l*

16  *Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 111 (1984) ("The

17  District Court employed the correct test for determining whether college football broadcasts

18  constitute a separate market—whether there are other products that are *reasonably substitutable*

19  for televised NCAA football games.") (emphasis added); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109,

20  1120–21 (9th Cir. 2018) (affirming dismissal for failure to plead a plausible product market and

21  noting the market "must encompass the product at issue as well as all *economic substitutes* for the

22  product") (emphasis added) (quoting *Newcal*, 513 F.3d at 1045); *Tanaka*, 252 F.3d at 1063

23  ("[Plaintiff's] conclusory assertion that the [proposed product market] is 'unique' and hence 'not

24  interchangeable with any other program in Los Angeles' is insufficient.").  That there is no magic

25  phrase required by the courts does not, however, relieve a plaintiff of her duty to plausibly allege

26  the contours of the product market, which necessarily requires allegations that speak to the

27  
28  

Case No.: 22-cv-00179-EJD
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT.
ORDER AND ADMIN. MOT. FOR STATUS CONF.

*United States District Court*
*Northern District of California*

question of substitute products.[1]

The Court finds that MLW has not included sufficient facts to plausibly allege a relevant antitrust product market.  Regarding the proposed market, the complaint alleges only that there are four competitors in the "United States professional wrestling market"; that the "business of promoting professional wrestling as sports entertainment is fundamentally a media industry, with revenues and business valuation[s] driven largely by fees obtained from broadcasting rights deals"; and that corporations such as NBCUniversal and Fox Sports "purchase broadcasting rights in the [proposed market] for their various distribution channels such as broadcast networks, cable and satellite services, streaming networks, and film production companies."  Compl. ¶¶ 17–19.  These facts, as pled, are not sufficient to provide an understanding of the characteristics of the relevant market, including the existence or lack of substitutes.[2]  For example, there are no allegations addressing why other "sports entertainment" or "media" content for which broadcasting rights might be sold to distribution channels are not appropriate substitutes.  MLW is correct that a single sport may constitute a relevant market, Opp'n 8; *see, e.g.*, *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1165 (D. Nev. 2016), but there are no facts alleged in the complaint to support that legal conclusion.  Additionally, the complaint uses multiple formulations to describe the proposed market, which further complicates the question of the market's boundaries and the reasonably interchangeable products contained within.  *Compare* Compl. ¶ 17 (defining as the "Relevant Market" the "national market for the sale of broadcasting rights for professional

---

[1] The Court notes, however, that a complaint need not identify every alleged competitor or include an extensive economic analysis of product substitutability.  *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 765 (N.D. Cal. 2022); *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 20 (D.D.C. 2021).

[2] The same analysis applies where the proposed market is a submarket of a broader industry:  a plaintiff must allege facts indicating that the products in the submarket are economically distinct from the more general market of substitutable products.  *Brown Shoe*, 370 U.S. at 325 ("The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."); *Olin Corp. v. FTC*, 986 F.2d 1295, 1299 (9th Cir. 1993) ("Because every market that encompasses than all products is, in a sense, a submarket, [the *Brown Shoe*] factors are relevant even in determining the primary market to be analyzed for antitrust purposes.") (citation omitted).

Case No.: 22-cv-00179-EJD
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT. ORDER AND ADMIN. MOT. FOR STATUS CONF.

United States District Court
Northern District of California

1  wrestling programs to networks, cable and streaming services) *with*, *e.g.*, *id.* ¶ 1 ("the U.S.

2  broadcasting market for professional wrestling"), *id.* ("media markets and wrestling talent"), *id.* ¶

3  10 ("the U.S. wrestling market"), *id.* ¶ 46 ("major national media markets").

4          MLW argues that the existence of reasonably interchangeable substitutes is a factual issue

5  inappropriate for resolution on a motion to dismiss, relying on *Reveal Chat Holdco, LLC v.*

6  *Facebook, Inc.*, 471 F. Supp. 3d 981 (N.D. Cal. 2020).  That reliance is misplaced.  In *Reveal Chat*

7  *Holdco*, the court expressly noted that "Plaintiffs need to clearly define the boundaries of the

8  market."  471 F. Supp. 3d at 999.  The court rejected defendant's argument that the proposed data

9  market did not "encompass all economic substitutes" as requiring a "more developed factual

10  record" because plaintiffs' allegations supported their arguments that specific characteristics

11  distinguished the data products at issue from other types of data.  *Id.*; *see* Plaintiffs' Corrected

12  Memorandum of Points & Authorities in Opposition to Facebook's Motion to Dismiss the Class

13  Action Complaint at 11, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981 (N.D.

14  Cal. 2020) (No. 20-cv-00363, ECF No. 43), 2020 WL 3892265 (quoting operative complaint).

15          For the reasons above, the Court finds that MLW's allegations are insufficient to plausibly

16  allege a relevant product market.  *See hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137,

17  1148 (N.D. Cal. 2020) (finding plaintiff failed to adequately allege antitrust product market

18  because "the parameters of the [proposed relevant] market—as pled—are vague" and "it is not

19  clear what substitutes there are for [] products such as those offered" by defendant).  Accordingly,

20  the Court GRANTS WWE's motion to dismiss MLW's Sherman Act claim.

21                        **2.       Monopoly Power and Antitrust Injury**

22          Although the Court dismisses the Sherman Act claim based on the insufficiency of the

23  relevant market allegations, it notes briefly that MLW's allegations regarding monopoly power

24  and antitrust injury, as currently pled, are unlikely to withstand a motion to dismiss for many of

25  the reasons outlined in WWE's Motion.  With respect to monopoly power, the Court finds

26  particularly concerning the bare allegation that WWE "holds approximately 85% of the market,"

27

28  Case No.: 22-cv-00179-EJD
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT.
ORDER AND ADMIN. MOT. FOR STATUS CONF.

United States District Court
Northern District of California

1    Compl. ¶ 24, because "Plaintiff does not even allege what it is measuring." *FTC v. Facebook,*

2    *Inc.*, 560 F. Supp. 3d 1, 18 (D.D.C. 2021).  In the paragraphs immediately prior to the market

3    share allegation, MLW alleges facts regarding WWE's annual revenue, the "combined average

4    annual value of WWE's U.S. TV rights" for certain programs, U.S. television viewership numbers

5    for certain WWE programs, and average television viewership ratings.[3]  Compl. ¶¶ 21–23.

6    Although the Court might, in some circumstances, "reasonably infer how Plaintiff arrived at its

7    calculations—*e.g.*, by proportion of total revenue . . . Plaintiff's allegations make it even less clear

8    what [it] might be measuring." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d at 18.  And the Court is

9    troubled by MLW's argument that it alleged direct evidence of monopoly power, including that

10   "WWE has also increased prices." Opp'n 11 (citing Compl. ¶¶ 10, 25, 52, 71–73).  From the

11   Court's review of the complaint, including the cited paragraphs, MLW alleges only that WWE has

12   "ke[pt] prices high," Compl. ¶ 10, "has the ability to raise prices," *id.* ¶ 25; *see also id.* ¶ 73,

13   prevented "access to [content] at lower prices," *id.* ¶ 52, and "eliminat[ed] price competition," *id.*

14   ¶¶ 71–72.  If MLW wishes to argue that WWE has "increased" prices, it should so allege.[4]

15        MLW's allegations regarding antitrust injury appear similarly lacking, as the harms it has

16   alleged—*e.g.*, loss of contract revenues due to WWE's interference—are specific to MLW, rather

17   than to competition at large.  *See, e.g.*, Compl. ¶¶ 48–51.  MLW includes a single allegation that

18   consumers would have increased access to higher quality professional wrestling entertainment

19   content at lower prices but for WWE's conduct, but it appends no additional facts to support this

20   conclusion.  *Id.* ¶ 52; *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012)

21   (stating plaintiffs must, "at a minimum, sketch the outline of [antitrust injury] with allegations of

22

23   [3] It is not clear to the Court why WWE's market power metrics were only compared to AEW's, as
     opposed to overall numbers for the proposed market. Compl. ¶¶ 21–23.  Similarly, the
24   significance of the comparison of the metrics for two or three WWE programs to one AEW
     program is not apparent to the Court.  *Id.* ¶ 23.  The latter metrics appear to compare apples to
25   oranges, and both sets of metrics appear only to indicate the relative success of WWE and AEW,
     rather than WWE's position in the overall proposed market.
26   [4] MLW states that it "is a fundamental principle of supply and demand that decreased output leads
     to increased price." Opp'n 11 n.9.  This "fundamental principle" requires assumptions, such as
27   constant demand, that MLW has not supported with allegations.

     Case No.: 22-cv-00179-EJD
28   ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT.
     ORDER AND ADMIN. MOT. FOR STATUS CONF.

United States District Court
Northern District of California

1    supporting factual detail").

2        **B.    State Law Claims**

3        Because the Court dismisses the Sherman Act claim, it lacks subject matter jurisdiction

4    over MLW's remaining claims under California law for intentional interference with contractual

5    relations, intentional interference with prospective economic relations, and violation of the UCL.

6    28 U.S.C. § 1367; *see* Compl. ¶ 15.  MLW's state law claims are therefore DISMISSED.

7        **C.    Leave to Amend**

8        The Court finds that additional allegations may cure the deficiencies outlined above and in

9    WWE's Motion.  Accordingly, the Court GRANTS MLW leave to amend.  Any amendment must

10   be filed within 21 days of the issuance of this order.

11       **D.    Other Motions**

12       Because the Court here resolves WWE's Motion to Dismiss, it DENIES as moot WWE's

13   Motion for Protective Order staying discovery during the pendency of the Motion to Dismiss.

14   Likewise, because MLW's complaint is dismissed, the Court DENIES as moot WWE's

15   Administrative Motion for Status Conference Regarding Discovery Schedule.

16   **IV.    CONCLUSION**

17       For the foregoing reasons, WWE's Motion to Dismiss is GRANTED with LEAVE TO

18   AMEND.  WWE's Motion for Protective Order and Administrative Motion for Status Conference

19   Regarding Discovery Schedule are DENIED as moot.  Discovery in this action is STAYED until

20   further Court order.

21       **IT IS SO ORDERED.**

22   Dated: February 13, 2023

23

24                                                    _____
                                                      EDWARD J. DAVILA
25                                                    United States District Judge

26

27   Case No.: 22-cv-00179-EJD
     ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOT. FOR PROT.
28   ORDER AND ADMIN. MOT. FOR STATUS CONF.

*United States District Court*
*Northern District of California*