# Exhibit A

K&L GATES

June 3, 2022

Morgan T. Nickerson
morgan.nickerson@klgates.com

T +1 617 261 3134
F +1 617 261 3175

**By FedEx**

MLW Media LLC
c/o Corporate Service Company
251 Little Falls Drive
Wilmington, DE 19808

**Re:  WWE — Cease and Desist — Trademark Infringement, False Advertising & Unfair and Deceptive Trade Practices**

To Whom It May Concern:

This firm represents World Wrestling Entertainment, Inc. ("WWE") with respect to intellectual property matters. As you are aware, WWE is an integrated media and entertainment company that has been involved in the sports entertainment business for over 35 years.  Over those years, WWE has made itself into one of the most popular brands in global entertainment.  At the heart of WWE's success are the athletic and entertainment skills and appeal of its talent, known as "WWE Superstars."  Such WWE Superstars include The Undertaker, Roman Reigns, Seth "Freakin" Rollins, Edge, and Triple H.

For its Superstars, WWE creates colorful characters that generally wrestle under a trademarked name and are distinctively delineated with unique persona, history, relationships, music, visual appearance, and behavior.  WWE has an extensive licensing program to create and sell products featuring its intellectual property which includes licensing of the names, likenesses, and copyrighted characters and personas of its Superstars.  The strength of WWE's brand and ownership and control over its intellectual property are among its most valuable assets.  To this end, WWE is the owner of all relevant intellectual property rights in several federally registered trademarks (the "WWE Marks"), including, but not limited to:

- The "ENZO AMORE" trademark for "entertainment services, namely, wrestling exhibitions and performances by a professional wrestler and entertainer" with Registration Number 6,091,286 (hereinafter, the "Enzo Amore Mark"); and

- The "nWo" trademark for "clothing" with Registration Number 2,968,039 (hereinafter, the "nWo Mark").  The design of the nWo Mark is protected and depicted below:



WWE advertises, distributes, and sells various services and products to consumers under the WWE Marks, including the Enzo Amore Mark and the nWo Mark, among others.

It has come to WWE's attention that MLW Media LLC ("MLW") is infringing upon WWE's trademarks, including the Enzo Amore Mark and the nWo Mark, to market and sell competing services and products. Specifically, WWE has learned that MLW has signed former WWE talent, Eric Arndt. In an unmistakable attempt to trade off of the popularity of Eric Arndt's WWE persona, "Enzo Amore," MLW has named his new character "nZo" and created merchandise, including clothing, which mimics the design of the nWo Mark depicted above.

This is, unfortunately, not the first time MLW has infringed on WWE's trademarks in a direct and deceptive manner. Previously, MLW attempted to trademark WAR GAMES to promote wrestling matches in direct violation of WWE's well-established ownership and use of the WAR GAMES Mark. Although MLW signed an agreement not to promote its product using the WAR GAMES Mark, MLW continues to infringe on the WAR GAMES Mark by using it to promote MLW content on YouTube and its website. See Agreement (attached here as Attachment A).

MLW's conduct amounts to trademark infringement and false advertising under the Lanham Act, 15 U.S.C. 1051, *et. seq*. Additionally, MLW's conduct constitutes unfair competition and deceptive business practices. WWE demands that MLW **IMMEDIATELY** cease and desist from the use of the WWE Marks in connection with its false advertising and sale of competing products and services. WWE further demands that MLW **IMMEDIATELY** provide an accounting of all sales of merchandise infringing on the Enzo Amore Mark and nWo Mark, an accounting of all revenue generated from videos infringing on the WAR GAMES Mark, and that MLW render to WWE all profits illegally obtained through MLW's unlawful infringement.

I. <u>**Trademark Infringement**</u>

First, MLW's use of the "nZo" name to market and sell content of former WWE talent, Eric Arndt, whose WWE Superstar name was "Enzo Amore," amounts to a straightforward case of trademark infringement under the Lanham Act. The name of Eric Arndt's new MLW persona, and corresponding merchandise marketing the same, is depicted below:


[1]

The Lanham Act prohibits the "use in commerce any *reproduction, counterfeit, copy, or colorable imitation* of a registered mark in connection with the sale, offering for sale, distributor, or advertising of any goods or services on or in connection with which *such use is likely to cause confusion, or to cause mistake, or to deceive*…."[2]

The name "nZo" is clearly designed to mimic Eric Arndt's former WWE Superstar name, Enzo Amore, which is protected by the Enzo Amore Mark, and the design of the "nZo" merchandise is visibly intended to copy the design of the nWo Mark. As a preliminary matter, the similarity between the "nZo" name and the Enzo Amore Mark is obvious, as the central and dominant part of each mark at issue—"nZo" and "Enzo"—is nearly identical in appearance, sound, and meaning.[3]  Notably, aural or phonetic similarity may be considered in determining the similarity of marks,[4] and "nZo" and "Enzo" sound identical when spoken.

Additionally, the similarities between the "nZo" design and the nWo Mark is readily apparent, as shown below:

---

[1] *Available at*:  https://www.wrestlinginc.com/news/2022/05/court-bauer-nzo-gets-over/.
[2] 15 U.S.C § 1114(1)(a) (emphasis added).

[3] See e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 936-37 (4th Cir. 1995) (finding the LONE STAR GRILL mark sufficiently similar to LONE STAR STEAKHOUSE & SALOON mark); Pizzeria Uno Corp. v. Temple, 747 F.2d 1522 (4th Cir. 1984) (finding the TACO UNO mark sufficiently similar to PIZZERIA UNO mark); Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc., 266 F. Supp. 2d 457, 462-63 (E.D. Va. 2003) (finding the SWEETWATER TAVERN mark sufficiently similar to SWEETWATER BREWING COMPANY mark).

[4] See, e.g., Roederer v. J. Garcia Carrion, S.A., 732 F. Supp. 2d 836, 869-70 (D. Minn. 2010) (recognizing the "aural similarity" between the CRISTAL and CRISTALINO marks").

| nZo Design | nWo Mark |
|---|---|
| | |

MLW's imitation of the Enzo and nWo Marks is intended to trade off of the goodwill WWE created in the Enzo Amore Superstar persona and confuse and deceive consumers into viewing and purchasing MLW's services and products. It is well recognized that intent on the part of an infringer to pass of its goods as the product of another creates an inference of likelihood of confusion, the essence of trademark infringement.[5]  Ultimately, MLW's conduct deceives the ordinary consumer into believing that MLW's products and services originate from, are affiliated, authorized, sponsored, or approved by, or are otherwise associated with the WWE, when they are not.

Finally, MLW continues to promote its content using the WAR GAMES Mark in direct breach of an agreement with WWE and WWE's continued ownership of and marketing of the WAR GAMES Mark. See Attachment A.



Accordingly, MLW's actions constitute trademark infringement and unfair competition in violation of federal and state laws, including the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

---

[5] Roederer, 732 F. Supp. 2d at 871.

## II. False Advertising

Furthermore, trademark law, specifically the Lanham Act, also prohibits false advertising and, specifically, "any *false designation of origin, false or misleading description of fact, or false or misleading representation[s] of fact*, which… in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities… of his or her or another person's goods, services, or commercial activities…."[6]

The Supreme Court recently added that the Lanham Act utilizes competitors as its enforcement mechanisms. The Court explained:

> Competitors who manufacturer or distribute products have detailed knowledge regarding how consumers rely upon certain sales and marketing strategies. Their awareness of unfair competition practices may be far more immediate and accurate than that of agency rulemakers and regulators…. *Lanham Act suits draw upon this market expertise by empowering private parties to sue competitors to protect their interests on a case-by-case basis.*[7]

Accordingly, WWE has a cause of action for trademark infringement arising out of the false advertisements of its competitors.[8]

Here, by copying WWE's trademarks to advertise and sell its "nZo" persona and related merchandise, MLW is intending to deceive the ordinary consumer into believing that marketing and advertisements for the "nZo" character originate from, or are affiliated, authorized, sponsored, or approved by WWE, or that MLW and WWE are otherwise associated, when they are not. Again, MLW is attempting to trade off the goodwill WWE created in the Enzo Amore Superstar and the Enzo Amore Mark.

For the foregoing reasons, MLW's actions constitute false advertising and a false designation of origin in violation of federal and state laws, including the Lanham Act, 15 U.S.C. § 1125.

## III. Unfair and Deceptive Business Practices

In addition to the foregoing, MLW's trademark infringement and false advertising constitutes unfair methods of competition and deceptive business practices pursuant to various state laws. Certain states provide for double or treble damages, as well as attorneys' fees, for violations of unfair competition laws.

---

[6] 15 U.S.C. § 1125(a)(1)(B) (emphasis added).

[7] POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2234 (2014) (emphasis added).

[8] Id. at 116.

5

### IV.     Conclusion

In order to avoid the time and expense of litigation, WWE demands that MLW **IMMEDIATELY c**ease and desist from the use of the WWE Marks, including, but not limited to, the WAR GAMES Mark as well as the Enzo Amore Mark and the nWo Mark in connection with its false advertising and sale of competing products and services, including the "nZo" character. WWE further demands that MLW **IMMEDIATELY** provide an accounting of all sales of merchandise infringing on the Enzo Amore Mark and nWo Mark, all revenue generated from infringement on the WAR GAMES Mark in videos hosted on YouTube and MLW's website, and that MLW render to WWE all profits illegally obtained through MLW's unlawful infringement.

Please confirm within **seven (7) days of the date of this letter** whether MLW will comply with WWE's demands.

Nothing herein is intended by WWE, nor should it be construed by MLW, as a waiver or relinquishment of any rights or remedies which WWE may have in this matter, and all such rights and remedies are hereby specifically reserved, including, without limitation, injunctive relief, an accounting of damages, and treble damages in the event that litigation becomes necessary.

Should you wish to discuss this matter, please feel free to contact me directly at morgan.nickerson@klgates.com.

 Sincerely,

Morgan T. Nickerson

# Exhibit A

## AGREEMENT

This Agreement (the "Agreement") is made and entered into between World Wrestling Entertainment, Inc., a Delaware corporation with a place of business at 1241 East Main Street, Stamford, Connecticut 06902 ("WWE") and MLW LLC, a Delaware limited liability company with a place of business at 1214 W. Boston Post Road, Mamaroneck, New York 10543 ("MLW"). WWE and MLW are referenced herein individually as a "Party" or collectively as the "Parties." The effective date of this Agreement is the date last set forth in the signature blocks below (the "Effective Date").

## RECITALS

A. WHEREAS, World Championship Wrestling ("WCW") and its predecessor, NWA, used the trademark WAR GAMES in connection with wrestling entertainment services beginning in or around 1989 through 2001, including as the name of annual wrestling pay-per-view event and corresponding video releases;

B. WHEREAS, in 2001, WWE acquired all right, title and interest in WCW's intellectual property and video library, including the WAR GAMES trademark;

C. WHEREAS, since 2001, WWE has continued to use its WAR GAMES trademark in commerce, including, but not limited to: (1) streaming the WCW WAR GAMES pay-per-views on WWE's 24/7 On Demand/WWE Classics on Demand cable service; (2) offering a DVD titled "WAR GAMES: WCW's Most Notorious Matches;" (3) streaming the WCW WAR GAMES pay-per-views under the title "WAR GAMES Collection" on the WWE Network; (4) promoting and producing the annual NXT Takeover: WAR GAMES live events; and (5) selling clothing depicting the WAR GAMES mark;

D. WHEREAS, on February 6, 2018, MLW filed two trademark applications with the United States Trademark Office ("USPTO") to register WAR GAMES in connection with wrestling entertainment services at U.S. Serial Nos. 87/785,597 and 87/785,600 (the "MLW War Games Applications");

E. WHEREAS, in or around July 2018, MLW began to use WAR GAMES in connection with the advertisement and promotion, including on its website at www.mlw.com, of an MLW wrestling show to be held in Ft. Lauderdale, Florida on September 6, 2018;

F. WHEREAS, MLW used WAR GAMES in connection with the name of its "Fusion Episode 22" program that aired the wrestling show that was held in Ft. Lauderdale, Florida on September 6, 2018 ("Fusion Episode 22");

G. WHEREAS, MLW and its partners, including beIN Sports, have re-aired, advertised and promoted Fusion Episode 22 online and through cable and satellite television;

H. WHEREAS, WWE never authorized MLW to use WWE's WAR GAMES mark in any fashion and, therefore, WWE has asserted that MLW's use of WAR GAMES mark in connection with Fusion Episode 22 constitutes trademark infringement, trademark dilution and unfair competition under federal and state law ("WWE's infringement claims");

I. WHEREAS, MLW denies that its activities with respect to its use of WAR GAMES constitutes unlawful conduct and denies WWE's assertions of trademark infringement, trademark dilution and unfair competition under federal and state law; and

J. WHEREAS, the Parties wish to resolve WWE's infringement claims amicably without making any admissions of wrongdoing, and to avoid future disputes between them regarding the subject matter hereof.

NOW THEREFORE, in consideration of the foregoing premises and the mutual promises made in this Agreement, the Parties, INTENDING TO BE LEGALLY BOUND, hereby agree as follows:

## TERMS

1. Within seven days of the Effective Date, MLW shall voluntarily abandon the WAR GAMES Applications by executing and filing an express abandonment with the USPTO. MLW shall provide a copy of said express abandonment to WWE's counsel concurrent with its filing.

2. MLW shall not apply to register, now or in the future, anywhere in the world: (a) the term WAR GAMES; (b) any mark that incorporates or contains the term WAR GAMES; or (c) any mark confusingly similar to WWE's WAR GAMES mark.

3. MLW shall not use, or authorize others to use, WAR GAMES (a) as the name of a wrestling event; (b) in connection with advertising or promotion of a wrestling event and/or (c) in connection with its wrestling services.

4. Within fifteen days of the Effective Date, MLW shall delete all uses of WAR GAMES under its control that are used to identify, advertise and/or promote Fusion Episode 22, including, but not limited to, on mlw.com, beinsports.com, YouTube, and/or any other networks or platforms found through reasonable efforts. In addition, for all uses of WAR GAMES known to MLW that are under the control of a third-party, MLW, within fifteen days of the Effective Date, shall notify the third-party, with copy to WWE's counsel, and request that the third-party delete the use of WAR GAMES and cease any such use in the future. It shall not be a breach of this Agreement if, notwithstanding the foregoing, a third-party does not delete the use of WAR GAMES.

5. If WWE identifies any uses of WAR GAMES that are not deleted pursuant to Paragraph 4 of this Agreement, WWE will provide notice of the identified uses to MLW. Within fifteen days of receiving notice from WWE, MLW shall take reasonable steps to delete the identified uses of WAR GAMES. If the identified uses of WAR GAMES are under the control of a third-party, MLW shall notify the third-party, with copy to WWE's counsel, and request that the third-party delete the use of WAR GAMES and cease any such use in the future. It shall not be a breach of this Agreement if, notwithstanding the foregoing, a third-party does not delete the use of WAR GAMES.

6. MLW agrees not to oppose, petition to cancel, or otherwise challenge or interfere with any use of, application for, or registration of WWE's WAR GAMES mark (whether alone or in conjunction with other letters, numbers, symbols, words, phrases, designs or marks).

7. WWE shall not object to MLW's continued use, airing or streaming of the recorded content of Fusion Episode 22, including the use of the term War Games embedded within the recorded content, so long as MLW is in compliance with the terms of this Agreement, and provided that "War Games" is not used to identify, advertise and/or promote the use, airing or streaming of the recorded content of Fusion Episode 22.

8. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective agents, employees, independent contractors, directors, shareholders, officers, partners, successors, assigns, licensees, predecessors, parent companies, and subsidiaries.

9. This Agreement is made without any admissions by the parties as to the validity of any claims or of any wrongdoing and is entered into solely to avoid the burden and expense of litigation.

10. This Agreement and all of its terms are confidential. Unless the Parties mutually consent in writing or a Party is otherwise ordered or subpoenaed or required by process of law by a court or agency of competent jurisdiction, each Party will maintain the confidentiality of this Agreement and all of its terms, and no Party to this Agreement will release any publicity or make any statement, publicly or privately, to any other person not a party to this Agreement (other than a Party's attorneys, accountants and financial advisors) with respect to the settlement effectuated by this Agreement.

11. This Agreement shall be interpreted and construed under and in accordance with the substantive law of the State of Connecticut, without regard to its conflicts of law provisions. Each Party submits to jurisdiction and venue in the federal and state courts located in the State of Connecticut for any claims arising under this Agreement.

12. This Agreement shall be considered as drafted jointly by the Parties and no uncertainty or ambiguity found in the terms hereof shall be construed for or against any Party based on an attribution of drafting to any Party.

13. This Agreement sets forth the entire understanding and agreement between the Parties and supersedes all prior oral and written communications with respect to the subject matter hereof. There are no oral understandings or other agreements between the Parties which have not been incorporated herein.

14. This Agreement may not be modified or amended except in a writing signed by both Parties.

15. The failure of either Party to insist upon performance of any provision of this Agreement or take advantage of any rights hereunder shall not be construed as a waiver of such provision or relinquishment of such right, which shall continue and remain in full force and effect.

16. Each Party shall bear its own costs and expenses accrued in connection with the settlement of this matter.

17. The Parties agree that it is the intention of neither Party to violate any public policy, statutory or common law, or governmental regulation; that if any sentence, paragraph, clause or combination of the same is, or becomes, in violation of any applicable law or regulation, or is unenforceable or void for any reason, such sentence, paragraph, clause or combination thereof shall be inoperative, and the remainder of the Agreement shall continue as binding upon the Parties.

18. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but which together shall be deemed to constitute a single document.

19. Any notification, or other communications required under this Agreement shall be sent to the Parties as follows:

| | |
|---|---|
| If to MLW: | Sarah Z. Bauer, Esq.<br>ZAMPINO LAW LLP<br>515 Madison Avenue, 35th Floor<br>New York, NY 10022<br>Email: Sarah@zampinolaw.com |
| With a copy to: | Darren W. Saunders<br>PEROFF SAUNDERS P.C.<br>745 5th Avenue, Suite 500<br>New York, NY 10151<br>Email: dsaunders@peroffsaunder.com |
| If to WWE: | World Wrestling Entertainment, Inc.<br>Attn: Lauren Dienes-Middlen<br>1241 East Main Street<br>Stamford, Connecticut 06902<br>lauren.middlen@wwecorp.com |
| With a copy to: | Curtis B. Krasik, Esquire<br>Christopher M. Verdini, Esquire<br>K&L GATES LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222<br>Email: curtis.krasik@klgates.com<br>christopher.verdini@klgates.com |

WHEREFORE, the Parties hereto have caused this Agreement to be duly executed and become effective as of the last date set forth below.

-5-

| MLW, LLC | | WORLD WRESTLING ENTERTAINMENT, INC. |
|---|---|---|
| By: *[signature]* | By: | *[signature]* |
| Name: J. Court Bauer | Name: | Matthew Winterroth |
| Title: CEO | Title: | VP, Intellectual Property |
| Date: January 11, 2019 | Date: | January 8, 2019 |