Daniel W. Fox (SBN 268757)
K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, CA  94103
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
daniel.fox@klgates.com

Jerry S McDevitt
K&L GATES LLP
210 Sixth Ave.
Pittsburgh, PA 15222
Telephone: (412) 355-8608
jerry.mcdevitt@klgates.com

Christopher S. Finnerty
Morgan T. Nickerson
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3123
christopher.finnerty@klgates.com

Derek W. Kelley
K&L GATES LLP
K&L Gates LLP
1601 K St. NW #1
Washington, D.C. 20006
Telephone: (202) 778-9467
derek.kelley@klgates.com

*Counsel for Defendant*
World Wrestling Entertainment, Inc.

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MLW MEDIA LLC, | Case No. 5:22-cv-00179-EJD |
| Plaintiff, | **DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | |
| WORLD WRESTLING ENTERTAINMENT, INC., | Hearing Date:      June 15, 2023 |
| Defendant. | Time:      9:00 AM |
| | Place:      Courtroom 4 or videoconference |
| | Judge:      Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.    MLW FAILS TO ALLEGE PLAUSIBLE SECTION 2 CLAIMS AGAINST WWE ........................................................................................................................ 2

    A.    MLW's Product Market Definition Remains Factually Unsupported ................... 2

    B.    MLW Cannot Cure Its Failure to Plead a Relevant Geographic Market ............... 4

    C.    MLW Did Not Plead Direct or Circumstantial Evidence of Monopoly Power ................................................................................................................ 4

        1.    MLW Did Not Plead Direct Evidence of Monopoly Power ..................... 4

        2.    MLW Did Not Plead Circumstantial Evidence of Monopoly Power ................................................................................................... 6

    D.    MLW Fails to Plead Anticompetitive Conduct ................................................... 8

        1.    MLW Fails to Allege Substantial Foreclosure of Television Networks and Streaming Services. ...................................................... 8

        2.    MLW Fails to Plausibly Alleged Substantial Foreclosure of Professional Wrestlers or Arenas ..................................................... 10

    E.    MLW Has Not Credibly Plead Harm to Competition or Antitrust Standing .......................................................................................................... 12

II.    MLW'S STATE LAW CLAIMS MUST BE DISMISSED ............................................ 15

III.    THE COURT SHOULD DENY LEAVE TO AMEND ................................................ 15

CONCLUSION ..................................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amarel v. Connell*,
    102 F.3d 1494 (9th Cir. 1996).......................................................................................... 12

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ....................................................................................................... 14

*Cargill Inc. v. Budine*,
    2007 WL 2506451 (E.D. Cal. Aug.30, 2007) ................................................................... 6

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
    290 F.3d 768 (6th Cir. 2002)............................................................................................ 3

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012)........................................................................................... 2

*Eastman Kodak v. Image Technical Servs, Inc.*,
    504 U.S. (1992).................................................................................................................. 5

*Fed. Trade Comm'n. v. Shkreli*,
    581 F. Supp. 3d 579 (S.D.N.Y. 2022) ............................................................................ 11

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. 2011) ................................................................................. 4, 5

*Greyhound Computer Corp., Inc. v. IBM Corp.*,
    559 F.2d 488 (9th Cir. 1977)........................................................................................... 11

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
    2012 WL 2711040 (N.D. Cal. July 6, 2012) ................................................................... 12

*Indeck Energy Services, Inc. v. Consumers Energy Co.*,
    250 F.3d 972 (6th Cir. 2000)........................................................................................... 14

*Klein v. Facebook, Inc.*,
    2022 WL 141561 (N.D. Cal. Jan. 14, 2022) ..................................................................... 6

*Korea Kumho Petrochem. v. Flexsys Am. LP*,
    2008 WL 686834 (N.D. Cal. Mar.11, 2008)..................................................................... 6

*Le v. Zuffa*.
    216 F. Supp. 3d 1154 (D. Nev. 2016) ............................................................................ 11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    467 F. Supp. 2d 74 (D.D.C. 2006) ................................................................................. 11

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ............................................................................................ 14

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.,*
    838 F.2d 360 (9th Cir. 1988) ................................................................................. 8

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,*
    2017 WL 4310767 (N.D. Cal. Sept. 28, 2017) ...................................................... 7

*Pro Search Plus, LLC v. VFM Leonardo, Inc.,*
    2013 WL 6229141 (C.D. Cal. Dec. 2, 2013) ........................................................ 12

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
    124 F.3d 430 (3d Cir. 1997) .................................................................................. 3

*Schneider v. Cal. Dept. of Corrections,*
    151 F.3d 1194 (9th Cir. 1998) ............................................................................... 4

*United States v. Dentsply, Inc.,*
    399 F.3d 181 (3d Cir. 2005) ............................................................................ 5, 10

*United States v. Syufy Enters.,*
    903 F.2d 659 (9th Cir. 1994) ......................................................................... 6, 7, 8

*In re Zinc Antitrust Litig.,*
    2016 WL 3167192 (S.D.N.Y. Jun. 6, 2016) .......................................................... 5

**Other Authorities**

Fed. R. Civ. P.  7(a) ...................................................................................................... 4

Fed. R. Civ. P. 8 ................................................................................................... 11, 12

1

**PRELIMINARY STATEMENT**

2      Defendant World Wrestling Entertainment, Inc. ("WWE") submits this reply memorandum

3   in support of its motion to dismiss the First Amended Complaint ("FAC") filed by MLW Media

4   LLC ("MLW").

5      MLW's opposition to WWE's motion to dismiss ("Opp.") is without foundation in truth

6   and is contradicted by its own allegations. MLW admits that it successfully sold its media rights to

7   a cable network, Reelz. It admits that other promotions such as All Elite Wrestling ("AEW") and

8   Women of Wrestling ("WOW") have expanded output and sold their media rights for millions of

9   dollars. These admissions are fatal to MLW's monopolization claim. Hoping to diminish them,

10   MLW told the Court that Reelz would prematurely cancel its contract with MLW because of WWE

11   and it labeled AEW and WOW "*de minimis*" competitors. In actuality, Reelz extended its ten-week

12   trial run with MLW, and MLW just announced multiple new, "hugely important" media rights

13   agreements with a streaming service, FITE. As for AEW, far from being a *de minimis* competitor,

14   it just expanded the sale of its media rights to WarnerBros.-Discovery ("WBD") for a reported *$240*

15   *million per year*.

16      With the truth so far divorced from the FAC, it is no surprise that MLW's antitrust claims

17   are inherently doomed. MLW has not and cannot plausibly allege relevant product or geographic

18   markets around media rights for professional wrestling. MLW has not and can never plausibly

19   allege direct or circumstantial evidence of WWE possessing monopoly power over television

20   networks and streaming services. And MLW has not and can never plausibly allege antitrust injury

21   or standing when it and other alleged competitors are, by public admissions, thriving. As for

22   MLW's tacked-on state law claims, the Court should dismiss them for lack of diversity and/or

23   supplemental jurisdiction and because they remain as facially implausible as they were in MLW's

24   original complaint.[1]

25

26   ───────────────

[1] WWE moved to dismiss MLW's state law claims based on arguments in its motion to dismiss.

27   *See* ECF 19. WWE did not wish to burden the Court with duplicative briefing. MLW argues that

28   the Court *cannot* consider prior briefing. While WWE recognizes that the Court is not *required* to

For these reasons, explained further below, WWE respectfully requests that the Court dismiss MLW's FAC with prejudice and deny as futile its request to further amend.

<u>**ARGUMENT**</u>

**I.**    **<u>MLW FAILS TO ALLEGE PLAUSIBLE SECTION 2 CLAIMS AGAINST WWE</u>**

**A.**    **<u>MLW's Product Market Definition Remains Factually Unsupported</u>**

This Court previously held that MLW failed to provide an "understanding of the characteristics of the relevant market, including the existence or lack of substitutes." ECF 62 at 6. Further, the Court held that MLW failed to include allegations "addressing why other 'sports entertainment' or 'media' content are not substitutes" for professional wrestling content from the perspective of its purchasers, i.e., television networks and streaming services. MLW has done nothing to correct these blatant defects.

**_First_**, MLW is wrong that professional wrestling is a "sport" and, thus, its media rights constitute a relevant product market as a matter of law. Opp. at 8. The Court already rejected this argument, requiring MLW to plead "facts . . . to support that legal conclusion." ECF 62 at 6. Those facts remain absent in the FAC. Even if sports were inherently relevant product markets, MLW admits, as it must, that professional wrestling is not a sport but a form of "scripted" and "predetermined" entertainment. FAC ¶ 25. Given these admissions, MLW must allege with factual support that a television network or streaming service would not consider a _Rocky_ movie, a reality TV show, or any other form of scripted entertainment as reasonable substitutes for professional wrestling. Mem. at 5-6. It has not.

**_Second_**, MLW still fails to plausibly allege that professional wrestling content is not reasonably interchangeable with other media content. MLW admits that television networks and streaming services are the purchasers of professional wrestling media rights. MLW also admits that not all television networks and streaming services purchase professional wrestling media rights.

---

accept arguments incorporated by reference, it is within the Court's discretion to do so. _See Davis v. HSBC Bank Nevada, N.A._, 691 F.3d 1152, 1160 (9th Cir. 2012). Regardless, the Court should defer ruling on state law claims brought in the wrong forum.

Finally, MLW admits that some networks and streaming services replace professional wrestling with non-wrestling content, or vice versa.[2] *See* Mem. at 6 (VICE not alleged to have replaced MLW with other wrestling); FAC ¶¶ 1, 27, 32 (after WWE acquired World Championship Wrestling in 2001, TBS and TNT did not air professional wrestling for 18 years until it acquired AEW's media rights). Given that networks and streaming services clearly switch between purchasing professional wrestling and purchasing other forms of scripted media content, MLW has failed to allege any facts plausibly defining a narrow product market around just professional wrestling media rights.[3] *See* Mem. at 6-7. To the contrary, the FAC suggests that television networks and streaming services view professional wrestling as just one of many interchangeable genres of content.

   ***Third***, WWE's purported exclusivity provisions with NBCU and FOX do not support MLW's narrow market definition. Opp. at 9. "A court making a relevant market determination looks not to the contractual restraints assumed by a particular [consumer] when determining whether a product is interchangeable, but to the uses to which the product is put by consumers in general." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997). MLW has not alleged how contractual limits on NBCU and FOX speak to what content television networks or streaming services "in general might [purchase] interchangeably." *Id.*

   As the Court previously held, MLW has a "duty to plausibly allege the contours of the product market, which necessarily requires allegations that speak to the question of substitute

---

[2] MLW cites an out-of-circuit decision, *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), for the proposition that professional wrestling media rights is a relevant product even if networks and streaming services purchase other content in different product markets. Opp. 10 n.6. However, market definition was not even contested in *Conwood*. *Id.* at 783.

[3] MLW claims that professional wrestling is a relevant product market because WWE NXT "lost only 8% of its viewership" to the 2023 State of the Union ("SOTU"). At best, this starts to suggest that the SOTU and professional wrestling are not part of the same relevant product market. This factoid fails to suggest, however, that television networks or streaming services would not substitute professional wrestling content with a scripted drama or reality show.

1    products." ECF 62 at 5-6. Once again, it has not done this.  Once again, MLW's monopolization

2    claims should be dismissed for this reason alone.

3            **B.**      **MLW Cannot Cure Its Failure to Plead a Relevant Geographic Market**

4            Just as MLW must plead a factually supported relevant product market, so too must it plead

5    a factually supported relevant geographic market. *See* Mem. at 7. It is undisputed that the FAC

6    lacks any facts supporting MLW's proposed geographic market.  Recognizing its pleading

7    omission, MLW attempts to cure its deficiencies through a declaration and reference to WWE's

8    10-K report. However, "a court *may not* look beyond the complaint to a plaintiff's moving papers,

9    such as a memorandum opposing the motion to dismiss, because such memoranda do not constitute

10   pleadings under Rule 7(a)." *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th

11   Cir. 1998) (emphasis in original). Even if the Court entertained WWE's 10-K report, a reference to

12   an annual report without further allegations is insufficient as a matter of law to plead a relevant

13   market. *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011).

14   Furthermore, MLW admits that it and WWE compete with Japanese promotions and a Canadian

15   promotion (Impact). FAC ¶ 31. The Court should therefore strike this improper attempt at re-

16   pleading and dismiss MLW's antitrust claims for failure to plead a geographic market.

17           **C.**      **MLW Did Not Plead Direct or Circumstantial Evidence of Monopoly Power**

18             **1.**      **MLW Did Not Plead Direct Evidence of Monopoly Power**

19           MLW fails to allege direct evidence of WWE's monopoly power in its purported relevant

20   product market. MLW argues that WWE is a monopolist because it allegedly negotiated more

21   lucrative media rights agreements from FOX and NBCU in 2018 that it did with just NBCU five-

22   years before. Stripped of conclusory allegations, however, the FAC fails to plausibly allege that

23   WWE's contracts reflect anything more than the fruits of lawful competition.

24           ***First***, MLW contends that the alleged increase in WWE's revenues from FOX and NBCU,

25   standing alone, prove WWE's ability to "control prices." Opp. at 11-12. This is a conclusion

26   without factual support. MLW merely alleges that, in 2014-2019, WWE had a single contract with

27   NBCU for two programs, *WWE RAW and WWE SmackDown*, valued at $130 million per year for

28   five years. FAC ¶ 56. MLW then alleges that, in 2018, WWE negotiated separate media rights

agreements with FOX for *WWE SmackDown* and with NBCU for *WWE RAW and WWE NXT* that, collectively, are valued at $470 million per year over five years. *Id.* at ¶ 55. Finally, MLW alleges that WWE entered into yet another agreement with NBCU to move its WWE Network platform and its subscribers to NBCU's streaming platform, Peacock, for $200 million per year over five years. *Id.* at ¶ 61.

What is missing is a single allegation about these contract negotiations, much less even a suggestion that WWE "controlled" or dictated terms to NBCU or FOX, two of the largest media companies on earth. MLW fails to allege any facts excluding equally plausible explanations for WWE's increased revenues, such as new competition between FOX and NBCU for WWE content or NBCU's desire to obtain the WWE Network's existing base of streaming customers for its fledgling streaming platform.

Cases finding monopoly power based on price increases involved facts not remotely similar to those alleged here. *See Eastman Kodak*, 504 U.S. at 465-69 (Kodak used control over aftermarket parts and sales agreements with equipment end customers to prevent third-party repair businesses from competing with Kodak's own repair services); *United States v. Dentsply, Inc.*, 399 F.3d 181, 194 (3d Cir. 2005) (Dentsply could impose higher prices because its teeth accounted for 83% of its top customers' revenues); *In re Zinc Antitrust Litig.*, 2016 WL 3167192 (S.D.N.Y. Jun. 6, 2016) (defendant's control over distribution chain allowed it to engage in price manipulation).

***Second***, MLW contends that alleged exclusivity provisions in the FOX and NBCU contracts are direct evidence of monopoly power. Of course, as WWE previously explained, exclusive contracts are not *per se* indicia of monopoly power. Mem. at 16-17. MLW fails to allege facts plausibly suggesting that these exclusive contracts are the result of anything but WWE and two purchasers' mutual desire for exclusivity.

***Third***, MLW does not and can never plausibly allege that WWE possessed "monopoly" power over FOX and NBCU (or any other media company). In *Dentsply*, Dentsply had power because it provided distributors with 83% of their revenues. As such, a dental distributor would lose 83% of its revenue if it did not deal with Dentsply. Here, FOX and NBCU allegedly *provide WWE* with 85% of its revenue. Thus, under *Dentsply*'s reasoning, FOX and NBCU have power

over WWE, not the other way around. Furthermore, MLW still has not explained, nor could it ever explain, how WWE possibly controls the purchasing decisions of dozens of large media companies that derive *zero* revenue from WWE. Mem. at 9-10.

### 2.   MLW Did Not Plead Circumstantial Evidence of Monopoly Power

*First*, MLW bases its circumstantial show of monopoly power on the bald assertion that WWE has 92% market share in the proposed market. MLW arrives at this figure in conclusory fashion by alleging that WWE captures 92% of the dollars that US television networks and streaming services currently spend on professional wrestling content.[4] However, MLW "must assert some facts in support of its assertions of market power that suggest those assertions are plausible." *Korea Kumho Petrochem. v. Flexsys Am. LP*, 2008 WL 686834, at *9 (N.D. Cal. Mar.11, 2008); *see also Cargill Inc. v. Budine*, 2007 WL 2506451, at *8 (E.D. Cal. Aug.30, 2007) (plaintiff failed to assert facts supporting defendant's alleged market share and, thus, did not satisfy the plausibility requirement). MLW fails to allege why revenues are an appropriate measure of market share. *See* Mem. at 10-11. Indeed, even MLW appears not to know the appropriate measure of market share: it admits that it used a completely different metric in its original complaint and has failed to explain this change. Opp. at 15 n.11.

MLW instead relies wholly on a naked assertion that revenues are a "well-settled" measure of market share. In cases that survived a motion to dismiss, however, plaintiffs supported the use of revenue to measure market share through factual allegations. *See, e.g.*, *Klein v. Facebook, Inc.*, 2022 WL 141561, at *16 (N.D. Cal. Jan. 14, 2022) (plaintiff provided "additional evidence to bolster their market share calculations" with allegations such as "Facebook's products include three

---

[4] MLW's calculations do not reflect its recent media rights deals, nor AEW's. Even if the Court accepted revenues as a measure for market share, these recent contracts have reduced WWE's market share from 92% to approximately 70% in just the *three months* since MLW filed the FAC. Such substantial loss in market share makes allegations of monopoly power implausible. *See United States v. Syufy Enters.*, 903 F.2d 659, 665-67 (9th Cir. 1994).

of the seven most popular mobile apps," and that Facebook reached "74% of smartphone users."). The FAC is devoid of similar factual allegations.

Indeed, MLW could never allege facts to establish revenues as an appropriate measure of market share. Market share reflects the pieces of the pie for which competitors are competing. WWE's alleged competitors are not competing for a fixed pool of revenues. If FOX, for example, did not renew its contract with WWE, FOX might still purchase wrestling content to fill its 8:00-10:00 PM Friday timeslot. However, MLW could not plausibly allege that FOX would pay it or other professional wrestling promotions the same $205 million for their content.  In fact, no allegations even plausibly suggest that FOX would replace WWE with professional wrestling content. It could just as plausibly spend that $205 million on a medical drama or dating show.

Even if MLW had alleged that WWE has a high market share, it is a "basic fact of economic life" that market share does not raise an "inference" of monopoly power if there is evidence of low entry barriers or a defendant's inability to control prices. *Syufy*, 903 F.2d at 664.  Indeed, "market share is just the starting point for assessing market power," and "[b]lind reliance upon market share, divorced from commercial reality, could give a misleading picture of a firm's actual ability to control prices or exclude competition." *Id.* (internal citations omitted).  As discussed above, MLW fails to plead facts plausibly demonstrating WWE's ability dictate prices to some of the largest companies on earth.

**Second**, MLW still has not plead plausible barriers to entry or that competitors lack the ability to expand output. This Court previously has held that "references [to barriers] are a start, but they are not enough," and a plaintiff must plead "supporting facts" describing those barriers. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2017 WL 4310767, at *9 (N.D. Cal. Sept. 28, 2017); Mem. at 11-13.  MLW fails to support or describe its alleged barriers to entry with any plausible factual allegations. Its argument for the existence of barriers to entry hinges almost entirely on WWE's alleged exclusive contracts with FOX and NBCU, as well as alleged exclusive contracts with professional wrestlers (which MLW admits to using as well). However, MLW's admissions of successful expansion by AEW and WOW undercut any argument that WWE's contracts impose artificial barriers to entry. Mem. at 11-13.

1   Perhaps aware that the FAC contradicts conclusory allegations of barriers to entry, MLW

2   calls AEW and WOW "*de minimis*" competitors whose growth WWE has hindered.[5] Yet AEW's

3   first media rights agreement with WBD, struck in the promotion's first year of existence, was

4   allegedly worth *substantially* more that MLW's alleged agreements with Reelz and Pro Wrestling

5   TV. FAC ¶ 62. Since MLW first filed this complaint in 2021, AEW has expanded its output from

6   two (2) hours of weekly content on WBD networks to six (6) hours and it has increased its annual

7   rights fees from allegedly $48 million to reportedly *$240 million* per year.[6] In four short years,

8   AEW has thus secured a media rights deal the value of which is almost *double* that of WWE's

9   alleged 2014-2019 contract with NBCU. FAC ¶ 56. Such monumental growth renders any claim of

10  barriers to entry implausible.

11   Clearly, this is not a market where "firm[s] remain[] very small." *Oahu Gas Serv., Inc. v.*

12  *Pac. Res., Inc.*, 838 F.2d 360, 367 (9th Cir. 1988). What MLW describes as "barriers to entry,"

13  stripped of conclusory labels, are just the costs that every wrestling promotion must incur in order

14  to compete in the alleged market. MLW simply has not competed as well as AEW. Competition,

15  however, is not a "structural barrier to entry." *Syufy*, 903 F.2d at 667.

16   **D.   MLW Fails to Plead Anticompetitive Conduct**

17   **1.   MLW Fails to Allege Substantial Foreclosure of Television Networks**

18   **and Streaming Services.**

19   MLW does not contest that there are dozens if not hundreds of television networks and

20  streaming services. Nor does MLW contest that at least 20 television networks and streaming

21  services currently or recently purchased professional wrestling content. MLW argues, however,

22  that it and every other wrestling promotion is "substantially foreclosed" from the market if it cannot

23

24   ──────────────

24  [5] Tellingly, neither AEW nor WOW has filed an antitrust suit against WWE.

25  [6] *See* Ex. A. MLW's own admissions concerning AEW's growth, in addition to these recent

26  developments, refute any allegations that competitors' output decreased. Moreover, MLW cannot

27  allege a single instance where it or another promotion could not produce professional wrestling

28  content because of WWE.

enter into media rights agreements with WWE's two customers, FOX and NBCU, during WWE's brief, five year period of alleged exclusivity. Otherwise, somehow, WWE's competitors are cut-off from 92% of the possible revenue that wrestling promotions can generate through the sale of media rights. Opp. at 17-18.

As explained in WWE's moving brief, this argument is wholly implausible and unsupported by either case law or MLW's own allegations. Mem. at 14-17.

**First**, MLW does not sufficiently plead that revenues are an appropriate measure for foreclosure. MLW cites cases that measured foreclosure through revenues *based on their facts*. Yet it also cites an influential treatise for the proposition that volumes sold rather than revenues can be an appropriate measure of foreclosure. Opp. at 18. MLW fails to allege facts in the FAC establishing that revenues are a more appropriate measure of market foreclosure than other, equally plausible measures, such as the number of available networks or streaming services.

**Second**, it makes no rational economic sense to measure foreclosure in the alleged market with revenues. This theory requires the Court to accept the facially implausible idea that wrestling promotions compete for a limited, fixed pool of revenue. Yet AEW just secured an increase in its annual media rights from allegedly $48 million to reportedly $240 million. Clearly, WWE's contracts with NBCU and FOX did not foreclose AEW from securing nearly $200 million more per year in media rights revenues.

**Third**, MLW cannot rely on *Dentsply* or *Microsoft* to argue foreclosure from "key" purchasers of broadcast rights.  *See* Opp. at 18-19. These cases stand for the proposition that control over a limited number of distributors can entrench a monopolist if access to those distributors is necessary to viable competition. MLW alleges that twenty networks and streaming services are the "key" purchasers of professional wrestling media rights. Yet, as WWE explained, MLW fails to allege *why* these twenty purchasers are necessary to viable competition, or *why* other networks or streaming services would not consider purchasing professional wrestling media rights for potentially millions of dollars. Fatal to this argument, if MLW had drafted its list of "key" purchasers in 2017, it would exclude two of the three biggest current purchasers of professional wrestling media rights: FOX and WBD. Mem. at 16.

*Fourth*, even if MLW had alleged that there are only twenty "key" purchasers of professional wrestling media rights, it has also alleged that WWE only has contracts with two of them. This is in stark contrast to *Dentsply*, where Dentsply had exclusive contracts with 23 "key" dealers. *Dentsply*, *supra* at 185.

*Fifth*, MLW has not plausibly alleged that it factually suffered foreclosure in any respect. At most, MLW alleges only it attempted to sell its media rights to Tubi and VICE, and that it successfully sold its media rights to Reelz. FAC at ¶ 53. Fatally, MLW never alleges that it attempted to sell its media rights to any of the other supposedly "key" purchasers but was told by them that a deal was impossible because of WWE. Indeed, AEW just renegotiated its contract with WBD and WWE's alleged five-year contracts with FOX and NBCU will expire in 2024, but MLW does not allege that it even contacted these companies, much less attempted to compete for their business. And contrary to MLW's allegations that its business relationships are at risk, Reelz extended MLW's initial ten-week trial run,[7] and MLW just announced multiple "hugely important" media rights agreements with FITE.[8]

### 2. MLW Fails to Plausibly Alleged Substantial Foreclosure of Professional Wrestlers or Arenas

MLW contends without any support that "courts do not require inputs to be defined as a separate relevant market." Opp. at 19. Instead, it argues that it only needs to plausibly plead "anticompetitive conduct." Not only is this incorrect, but MLW falls far short of its own standard.

*First*, MLW is wrong that it need not plead relevant markets around inputs. Without pleading relevant input markets – here, for professional wrestlers or arenas – the Court would have no possible way of knowing who constitutes a "professional wrestler"[9] or what constitutes a

---

[7] Ex. B.

[8] Ex. C; Ex. D.

[9] As wrestling is scripted entertainment and not a competitive sport, the answer to this question is not as obvious as the answer to, *e.g.*, "what is a basketball player?" For example, Grammy award-

suitable venue for taping professional wrestling content. Similarly, and perhaps more importantly, without defining relevant markets, the Court would have no way of determining whether conduct is anticompetitive. For example, an alleged exclusive contract with three out of five professional wrestlers may have anticompetitive effects, but the same agreement with three out of a five thousand likely will not.

Cases cited by MLW do not support its position as, in each of them, an input market was either defined or not contested. *See Greyhound Computer Corp., Inc. v. IBM Corp.*, 559 F.2d 488, 502-03 (9th Cir. 1977) (holding merely that a plaintiff need not establish *monopoly power* in an otherwise defined sales market); *In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 82 (D.D.C. 2006) (input market defined as the active pharmaceutical ingredient for relevant drugs); *Fed. Trade Comm'n. v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022) (same). MLW fails to credibly distinguish *Le v. Zuffa, Inc.*, 216 F. Supp.3d 1154 (D. Nev. 2016). MLW simply recognizes that, unlike the plaintiff in *Le*, it could never allege a valid Section 2 claim around its alleged inputs.

**Second**, even if MLW had alleged relevant markets around professional wrestlers or arenas, it has not remotely alleged substantial foreclosure. MLW does not even contest this.

**Third**, MLW has not alleged any anticompetitive effects from these purported input foreclosures. *See* Mem. at 18-19. MLW has not, for example, alleged a single instance when WWE prevented it from securing an arena or contracting with a talent not already under contract. All MLW has alleged is that WWE, like MLW, has exclusive contracts with its professional wrestlers, and that WWE vigorously and *per se* lawfully protects its intellectual property rights.

Recognizing that it could never plead these facts, MLW simply states in a footnote without support, "[N]othing in Federal Rule of Civil Procedure 8 requires MLW to identify the wrestlers whom WWE threatened with blacklisting." Of course, Rule 8 requires the opposite: MLW must

---

winning rapper Bad Bunny recently headlined a WWE premium live event, *Backlash*, in Puerto Rico. *See* https://www.wwe.com/shows/backlash.

plead with sufficient specificity to plausibly state a claim. It has not.[10] Stripped of conclusory labels such as "locking up" or "predatory hiring,"[11] MLW simply asserts that WWE and MLW compete for talent and venues.

### E.     MLW Has Not Credibly Plead Harm to Competition or Antitrust Standing

Although the Court dismissed MLW's original complaint on market definition grounds, it expressed concern that MLW's allegations suggested only specific harm to MLW and not to competition at large. ECF 62 at 8. Those same deficiencies persist in the FAC.

*First*, harm to a competitor alone is *insufficient* to establish antitrust injury. This is blackletter antitrust law, and cases cited by MLW do not hold differently. In each case, the plaintiffs alleged not only harm to themselves as competitors, but harm to the competitive process as well. *See Amarel v. Connell*, 102 F.3d 1494, 1508 (9th Cir. 1996) (claim based on predatory, *i.e.*, below-cost, pricing, which presumptively harms competition); *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 6229141, at *1, 9 (C.D. Cal. Dec. 2, 2013) (*de facto* exclusive contracts harmed competition in because they foreclosed competitors from, *inter alia*, the allegedly "sole" content and information aggregator in the travel industry); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, 2012 WL 2711040, at *7 (N.D. Cal. July 6, 2012) (injury to competition in the form of excluding other competitors from the market plead separately from injury to plaintiff). At most, MLW has

---

[10] MLW falsely states that WWE "lock[s] up the intellectual property rights of professional wrestlers." Opp. at 20-21. MLW knows that this is untrue because it contracts with former WWE talent who retain rights to their intellectual property created prior to joining WWE.

[11] The term "predatory hiring" is oxymoronic. Predatory hiring claims require hiring done solely, incontrovertibly for the purpose of denying talent to a competitor. (For example, a software company hiring a computer programmer to be a janitor. *See* Areeda ¶ 702c.) Antitrust laws, of course, do not dictate how WWE must promote professional wrestlers or how heavily featured they must be in ongoing storylines. Thus, such claims are disfavored and almost always rejected. *Id.*

alleged that it lost two contracts, which standing alone is not sufficient to plead harm to competition. *See* Mem. at 23.

*Second*, contrary to the tale MLW weaves in its opposition, the FAC shows MLW succeeding in the marketplace. MLW admits that, since it first filed this action, it successfully sold its media rights to Reelz. FAC ¶ 32. MLW attempted to minimize this success through a reference to unsubstantiated online rumors (rather than its own interactions with Reelz) that WWE's exclusive contract with NBCU's Peacock would cause Reelz to cancel MLW programming prematurely. Yet Reelz did not cancel MLW. Instead, it continued to purchase and air MLW content beyond an initial ten-week trial period.[12] Separately, MLW plead that WWE somehow blocked it from selling its media rights to FITE, a streaming platform, despite the fact that WWE has no alleged contractual relationship with FITE. FAC ¶ 91. In actuality, MLW just announced a new, "hugely important" agreement with FITE, and MLW's weekly program, *Fusion*, is now available on FITE+, beIN Sports, and YouTube, and MLW entered into yet another agreement with FITE to air its premium live events, similar to how Peacock airs WWE's premium live events.[13]

MLW may feel that these successes pale in comparison to those of upstart AEW, but MLW fails to plausibly tie its disappointment to actual conduct by WWE. *See* Mem. at 21. Under no theory can MLW credibly articulate competitive harm.

*Third*, even if the Court accepted MLW's implausible allegations of interference with Tubi and VICE, MLW still has not alleged harm to competition. The FAC demonstrates that alleged competitors such as AEW and WOW are thriving, expanding the amount of content they sell, and making millions of dollars in the process. *See* Mem. at 15-16. That is even truer now. As a recent WBD press release states, "In only four years following the launch of 'AEW: Dynamite,' AEW's footprint has more than doubled across TNT and TBS."[14] TBS and TNT are now "doubling-down

---

[12] See *supra* n.7.

[13] *See supra* n.8.

[14] Ex. E.

on wrestling" by adding another two hours of AEW programming to its lineup.[15] The reported value of this new media rights agreement is $240 million per year. Given AEW's success in the market in only four years, MLW could never plausibly allege that WWE uses monopoly power to foreclose competitors in the purported relevant market.

**Fourth**, MLW does not plausibly allege that networks or streaming services paid supracompetitive prices or were denied choices for professional wrestling media rights. MLW rests entirely on alleged increases in WWE's media rights fees from two purchasers, FOX and NBCU. As discussed above and in WWE's moving brief, however, MLW fails to allege any facts excluding equally plausible explanations for WWE's increase in media rights fees. MLW similarly fails to allege that FOX or NBCU even considered purchasing professional wrestling content other than WWE. Finally, MLW admits that the number of choices for producers of professional wrestling content keeps expanding, and that numerous purchasers are acquiring professional wrestling content if they want it.

**Fifth**, MLW has no standing to assert claims on behalf of the networks and streaming services that allegedly paid higher prices. As WWE explained, MLW would in fact benefit from such conduct because it would elevate the value of other professional wrestling media rights. *See* Mem. at 22 n.13. *See also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 335-38 (1990) (competitor not injured by price-fixing conspiracy because "higher ARCO prices would have worked to [plaintiff's] advantage"); *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986) ("[A]s petitioners' competitors, respondents stand to gain from any conspiracy that raises the market price . . . ."). Contrary to MLW's assertion, antitrust standing is appropriately considered on a motion to dismiss. *See Indeck Energy Services, Inc. v. Consumers Energy Co.,* 250 F.3d 972, 977 (6th Cir. 2000) (dismissing competitor's complaint because it was not a "direct victim of the alleged violation.").

---

[15] *Id.*

## II.  MLW'S STATE LAW CLAIMS MUST BE DISMISSED

MLW's failure to adequately allege a federal cause of action means this Court *must* dismiss the remaining state law claims for lack of subject matter and diversity jurisdiction.  *See* Mem. at 17.  Even if the monopolization claim survives, MLW fails to muster any arguments to save its implausible state law claims. *See* ECF 19.

## III.  THE COURT SHOULD DENY LEAVE TO AMEND

MLW again requests leave to amend the FAC if dismissed.  The Court should not grant it. MLW can never plausibly plead that WWE has market power over television networks or streaming services, some of the largest and most powerful corporations on earth, all with the means and ability to produce their own professional wrestling content or buy it (or other genres of content) from the myriad of other content creators.  Similarly, MLW could never plausibly allege harm to competition given its and AEW's recently touted successes. Accordingly, any amendment to the federal antitrust claim is futile and, without that claim, the entire FAC must be dismissed.

**<u>CONCLUSION</u>**

WHEREFORE, for each of the reasons explained above, World Wrestling Entertainment, Inc. respectfully requests that the Court dismiss MLW Media LLC's FAC with prejudice for failure to state a claim upon which relief can be granted and for whatever other relief the Court deems just and equitable.

1   Dated: May 29, 2023                          K&L GATES LLP

2

3                                                By: *Christopher S. Finnerty*

4

5                                                Daniel W. Fox (SBN 268757)
                                                 K&L GATES LLP
6                                                Four Embarcadero Center
                                                 Suite 1200
7                                                San Francisco, CA  94103
                                                 Telephone: (415) 882-8200
8                                                Facsimile: (415) 882-8220
                                                 daniel.fox@klgates.com
9
                                                 Jerry S McDevitt
10                                               K&L GATES LLP
                                                 210 Sixth Ave.
11                                               Pittsburgh, PA 15222
                                                 Telephone: (412) 355-8608
12                                               jerry.mcdevitt@klgates.com

13                                               Christopher S. Finnerty
                                                 Morgan T. Nickerson
14                                               K&L GATES LLP
                                                 State Street Financial Center
15                                               One Lincoln Street
                                                 Boston, MA 02111
16                                               Telephone: (617) 261-3123
                                                 christopher.finnerty@klgates.com
17                                               morgan.nickerson@klgates.com

18                                               Derek W. Kelley
                                                 K&L GATES LLP
19                                               K&L Gates LLP
                                                 1601 K St. NW #1
20                                               Washington, D.C. 20006
                                                 Telephone (202) 778-9467
21                                               derek.delley@klgates.com

22                                               *Counsel for Defendant*
                                                 World Wrestling Entertainment, Inc.
23

24

25

26

27

28