*Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLW MEDIA LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>　　　　　Defendant. | Case No: 5:22-cv-00179-EJD<br><br>**AS MODIFIED BY THE COURT** |

~~[Proposed]~~ **Order and Stipulated Protocol for Conducting Electronic Discovery**

The undersigned Parties to the above-captioned case (the "Litigation"), through their respective counsel, agree that the terms and conditions of this Protocol for Conducting Electronic Discovery ("ESI Protocol") shall govern the search for, disclosure of, and format of electronically stored information ("ESI") and Documents.

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS:**

**1.　Definitions**

　　1.2.　"Defendant" means World Wrestling Entertainment, Inc.

---

~~[PROPOSED]~~ ORDER AND STIPULATED PROTOCOL FOR CONDUCTING ELECTRONIC DISCOVERY
Case No. 5:22-cv-00179-EJD

1.3. "Custodial Data Source" means any data source that the Producing Party has control over, as contemplated in Federal Rule of Civil Procedure 34(a)(1), and that is used for business purposes in or on which a custodian may store potentially relevant Documents or ESI., including but not limited to computers, laptops, tablets, email (whether stored locally or centrally), mobile devices, messaging applications, shared network servers, shared or individual network folders, cloud storage systems, structured data systems, or social media accounts. The aforementioned sources are by way of example only and are not an admission that discoverable information exists in each location.

1.4. "Non-Custodial Data Source" means any company-issued or company-controlled data source that is not kept or maintained by any particular custodian but that may contain potentially relevant Documents or ESI, including data sources used by any department, business unit, or division of the Producing Party, and shared storage systems that may contain potentially relevant information, such as email systems, backup systems or backup media, or archival systems or archival storage. The aforementioned sources are by way of example only and are not an admission that discoverable information exists in each location.

1.5. "Document" shall have the meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A).

1.6. "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

1.7. "Action" means *MLW Media LLC v. World Wrestling Entertainment, Inc.*, No. 5:22-cv-00179-EJD (N.D. Cal.).

1.8. "Plaintiff" means MLW Media LLC and all other individuals or entities that join in this Litigation as a Plaintiff at a later date.

1.9. "Producing Party" means the party or third party that produces information, Documents, or ESI in this Litigation.

1.10. "Receiving Party" means the party that receives information, Documents, or ESI produced in this Litigation.

1.11. "Search Term" means a word or a combination of words or phrases designed to capture potentially relevant ESI and includes strings of words or phrases joined by proximity and Boolean connectors or other syntax.

2. **Scope**

   2.1. The procedures and protocols set forth in this ESI Protocol shall govern the search for, disclosure, and format of Documents and ESI produced for use in this Litigation. This ESI Protocol does not define the scope of production nor the relevance or discoverability of any particular information. Nothing in this ESI Protocol establishes any agreement as to either the temporal or subject-matter scope of discovery in this Litigation. No provision of this ESI Protocol waives any objections to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

   2.2. Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights. To the extent additional obligations arise under the Federal Rules of Civil Procedure, local rules, this Court's Individual Rules of Practice in Civil Cases, applicable state and federal statutes, and/or applicable case law, they shall be controlling.

   2.3. The parties shall meet and confer in an effort to resolve any disputes that may arise under this ESI Protocol before seeking assistance from the Court.

3. **Format of Production**

   3.1. <u>Specifications</u>: Each Producing Party shall produce Documents or ESI according to the specifications provided in Exhibit A, unless otherwise agreed in writing by a Receiving Party.

   3.2. <u>Global Deduplication</u>: Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family

level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the "Alternative Custodian" metadata field, to the extent applicable. The Parties agree that production of ESI globally de-duplicated in accordance with the provisions of this ESI Protocol shall constitute production of ESI as maintained in the ordinary course of business.

3.3.  <u>Email Thread Suppression</u>: Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. A Producing Party may use email thread suppression to exclude duplicative, lesser-included emails from production; provided, however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical.

3.4.  <u>Unitization</u>: In scanning hard-copy documents, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records. The Producing Party shall take reasonable steps to physically and logically unitize hard-copy documents in a manner consistent with how such documents were maintained in the normal course.

3.5.  <u>Password-Protected Files</u>: The Producing Party shall make reasonable efforts to ensure that encrypted or password-protected Documents, which are attached to another Document meeting publishing criteria or where the encrypted or password-protected Documents have extractable metadata meeting publishing criteria, are processed for review and production under the requirements of this ESI Protocol, and the decrypted Document is produced if responsive and not privileged. To the extent such a Document is not successfully processed and is either attached to another

Document meeting publishing criteria or itself has extractable metadata meeting publishing criteria, the Producing Party agrees to: (a) produce a slipsheet for each encrypted or password-protected Document that cannot be successfully processed indicating that the Document cannot be decrypted; and (b) provide the metadata for the Document required by Exhibit A to the extent it can be reasonably extracted from the file in its encrypted form.

4. **Search Terms and/or Technology Assisted Review**

    4.1. Disclosure of Sources of Potentially Relevant Documents and ESI

        a) As soon as reasonably practicable following the determination of custodians, Plaintiff and Defendant shall meet and confer concerning the appropriate Custodial and Non-Custodial Data Sources.

        b) If, upon investigation, it is determined that a Custodial or Non-Custodial Data Source is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B), the Party with this data source shall identify why it considers the information contained on this data source not to be reasonably accessible. If the Requesting Party intends to seek discovery on these data sources, the Parties shall meet and confer and, if necessary, ~~seek resolution by the Court~~ submit the dispute in accordance with Judge van Keulen's Civil and Discovery Referral Matters Standing Order.

    4.2. Before conducting a search for responsive ESI, regardless of the search methods to be employed, including but not limited to Technology Assisted Review ("TAR") or search terms, the Parties shall meet and confer regarding the search methods that the Producing Party intends to employ to identify responsive Documents. This provision shall not be interpreted to require a Producing Party to use any particular search method.

    4.3. To the extent a Producing Party elects to use Search Terms as a means of limiting the volume of information to be reviewed for responsiveness, prior to conducting any such searches, that Producing Party shall disclose the following to the Receiving Party:

|   |   |   |
|---|---|---|
| | a) | A list of the Custodians and Custodial and/or Non-Custodial Data Sources against which the Search Terms will be applied; and |
| | b) | An initial list of the Search Terms the Producing Party plans to use. |
| 4.4. | | After receipt of the proposed Search Terms, the Parties shall meet and confer to attempt to reach agreement on the Search Terms. |

**5.    Claims of Privilege**

    5.1.   In an effort to avoid unnecessary expense and burden associated with traditional "document by document" privilege logs, the Parties agree that for documents withheld from production or redacted on the basis of attorney-client privilege, work-product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document (except those exempted below) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include, at a minimum, the following information from the top line email and from any attachment, in separate entries:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- NUMBER_OF_ATTACHMENTS
- CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEXT
- DOCTYPE
- AUTHOR
- CREATEDDATE

- HASH (MD5 OR SHA-1)
- REDACTED
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)

5.2. In addition to the fields described in section 5.1, the Producing Party also will provide an additional field regarding the subject matter of the document. The Producing Party shall also produce, with any summary log, a list of all counsel identified in the summary log.

5.3. Plaintiff and Defendant agree that the following privileged or otherwise protected communications may be excluded from privilege logs. The exclusion of these materials from privilege logs in no way suggests that other materials not excluded from privilege logs are either not privileged or are less privileged than those materials listed below, and is not intended to waive any privilege associated with materials not excluded from privilege logs:

a) any documents, communications, or work product sent solely among or within outside counsel for Plaintiff or Defendant or persons employed or retained by such counsel;

b) communications to, from, among, or within Plaintiff's inside counsel or Defendant's inside counsel solely related to the defense of this Litigation;

c) after the filing of the Complaint on January 11, 2022, any documents or communications regarding the defense of this Litigation sent solely between outside counsel for Defendant and (i) Defendant or (ii) Defendant's employees, or solely between outside counsel for Plaintiff and (i) Plaintiff or (ii) Plaintiff's employees. Notwithstanding the foregoing, privileged documents or communications that may otherwise be exempt from logging under this subpart must nevertheless be logged if any portion of the document or communication also concerns ongoing or forward-looking business decisions, plans, actions, or practices;

        d)        non-responsive privileged documents attached to responsive documents; however, when privileged documents that are attached to responsive documents are withheld from production, the parties will insert a placeholder to indicate a document has been withheld from that family; and

        e)        draft litigation filings.

5.4. Plaintiff and Defendant shall produce Documents in this matter on a rolling basis. Plaintiff and Defendant shall serve privilege logs on a rolling basis beginning no later than 90 days after their respective first document productions, unless otherwise agreed. The Parties will make a good faith effort serve privilege logs on a rolling basis. Plaintiff and Defendant further agree that they have reserved all rights to challenge any privilege claims, whether described on logs previously produced or otherwise.

**6.  Redaction**

The Parties may redact Documents or ESI on the following bases: attorney-client privilege, attorney work-product privilege, other applicable legal privilege, HIPAA-related privacy information, and personal identifying information. Documents or ESI redacted for HIPAA-related privacy information or personal identifying information need not be logged. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer before such redactions are made. If the issue cannot be resolved, the Parties will ~~seek resolution from the Court~~ *initiate a joint submission in accordance with Judge van Keulen's Standing Order*. Documents or ESI that are produced with redactions may be produced without corresponding metadata, but should contain OCR for the un-redacted portion of the document.

**7.  Preservation of ESI**

The Parties' preservation obligations are defined by the Federal Rules of Civil Procedure and relevant case law (and, in particular, Federal Rule of Civil Procedure 26(b)). The Parties recognize that their preservation obligations may therefore extend to Non-Custodial Data Sources

and Custodial Data Sources in their possession, custody, or control as required under the Federal Rules.

**8.    Inadvertent or Other Production of Privileged or Otherwise Protected Material**

    8.1.    Nothing in this ESI Protocol shall be construed to prohibit a Producing Party from seeking relief from any inadvertent, unintentional, or other disclosure of confidential, privileged, non-responsive, or work-product information ("Privileged Material").

    8.2.    When a Producing Party gives notice to Receiving Parties that it inadvertently produced Documents or information that are protected from disclosure under the protective order, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or that should otherwise have been withheld from disclosure ("Clawback Notice"), or the Receiving Party discovers such inadvertent production of Privileged Material, that production shall not be deemed a waiver of the applicable privilege or protection in this or any other action.

    8.3.    If the Receiving Party discovers a potential inadvertent production of Privileged Material, the Receiving Party shall promptly notify the Producing Party of its discovery of the potential production.

    8.4.    If the Receiving Party does not challenge the Clawback Notice, the Receiving Party shall take reasonable steps to return or destroy all reasonably accessible copies of such Documents, testimony, information and/or things promptly after receipt of the Clawback Notice or of discovery of the production, and shall not use such items for any purpose until further order of the Court.

    8.5.    If a Receiving Party wishes to challenge the basis for the Clawback Notice, the Receiving Party must inform the Producing Party of its challenge within seven (7) business days of receipt of the Clawback Notice or of providing notice of the discovery of the inadvertent production.

8.6. The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring within seven (7) business days of the date of receipt of notice of the challenge.

8.7. If the dispute is not resolved during the meet-and-confer, the challenging party must <span style="color:red">initiate a joint submission in accordance with Judge van Keulen's standing order</span> ~~file its challenge with the Court~~ within seven (7) business days of the meet and confer, unless the Parties agree to a longer schedule.

8.8. The Receiving Party may maintain a sequestered copy of the Privileged Material until any challenge to the designation of that Material as Privileged is resolved by the Court, but the Receiving Party may not access, review, disclose, or use the Privileged Material (including in making a challenge to the designation of that Material as Privileged) until the Court resolves the issue. Notwithstanding the preceding sentence, the Court, in its discretion, may review Privileged Material in camera to rule on a challenge to the designation of that Material as Privileged. The destruction of any discovery item shall not in any way preclude the Receiving Party from ~~moving the Court~~ <span style="color:red">initiating a joint submission</span> for a ruling that the Privileged Material was not properly withheld. Nothing in this ESI Protocol shall diminish the legal rights of any party seeking such relief.

8.9. Pursuant to Federal Rule of Evidence 502(d), production of Privileged Material shall not waive the attorney-client privilege or the work-product protection in this Litigation or in any other action. This ESI Protocol shall be interpreted to provide the maximum protection allowed under applicable law.

8.10. The provisions of Federal Rule of Evidence 502(b) are inapplicable to the disclosure of Privileged Material under this Order.

9. **Protective Order**

All Documents and ESI produced by the Parties will be subject to the terms of the Stipulated Protective Order entered in this Litigation.

**10.    Foreign-Language Documents**

To the extent that responsive Documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language Documents and ESI in the original language. The Producing Party has no obligation to create a translation of the foreign language Documents or ESI or any portion thereof, provided that to the extent that the Producing Party identifies within its possession, custody, or control a non-privileged pre-existing English language translation of responsive Documents or ESI, or creates a non-privileged English translation of such Documents or ESI for use in the Litigation, the Producing Party shall produce such English language translation.

**11.    Liaison**

The Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**12.    Cooperation**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Court's Guidelines for the Discovery of ESI.

**13.    Amendment of Order**

Nothing herein shall preclude Plaintiff or Defendant from seeking to amend this ESI Protocol, provided that the Parties first meet and confer before ~~Plaintiff or Defendant seek relief from the Court~~ *initiating a joint submission in accordance with Judge van Keulen's standing order*.

1   **IT IS SO ORDERED.**

3   Dated: August 3, 2023

_____
~~Hon. Edward J. Davila~~
~~UNITED STATES DISTRICT JUDGE~~
Hon. Susan van Keulen
UNITED STATES MAGISTRATE JUDGE

| ON BEHALF OF **MLW Media LLC** | ON BEHALF OF **World Wrestling Entertainment, Inc.** |
|---|---|
| By: */s/ Christine A. Montenegro* | By: */s/ William Michael* |
| Marc E. Kasowitz (*pro hac vice*)<br>Hector Torres (*pro hac vice*)<br>Christine A. Montenegro (*pro hac vice*)<br>Nicholas A. Rendino (*pro hac vice*)<br>Kasowitz Benson Torres LLP<br>1633 Broadway<br>New York, NY 10019<br>Telephone: (212) 506-1700<br>Facsimile: (212) 506-1800<br>mkasowitz@kasowitz.com<br>htorres@kasowitz.com<br>cmontenegro@kasowitz.com<br>nrendino@kasowtz.com<br><br>Jason S. Takenouchi (CBN 234835)<br>Kasowitz Benson Torres LLP<br>101 California Street, Suite 3000<br>San Francisco, California 94111<br>Telephone: (415) 421-6140<br>Fax: (415) 398-5030<br>jtakenouchi@kasowitz.com<br><br>*Counsel for Plaintiff MLW Media LLC* | Walter F. Brown (SBN: 130248)<br>wbrown@paulweiss.com<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105<br>Telephone: (628) 432-5100<br><br>Karen L. Dunn (*pro hac vice*)<br>kdunn@paulweiss.com<br>William A. Isaacson (*pro hac vice*)<br>wisaacson@paulweiss.com<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K Street, NW<br>Washington, DC 20006<br>Telephone: (202) 223-7300<br>Facsimile: (202) 223-7420<br><br>William Michael (*pro hac vice* )<br>wmichael@paulweiss.com<br>Brette M. Tannenbaum (*pro hac vice*)<br>btannenbaum@paulweiss.com<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br><br>*Counsel for Defendant World Wrestling Entertainment, Inc.* |

# EXHIBIT A

1. A cover letter or email shall be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD, CD, secure FTP), shall identify each production on such media by assigning a Production Volume name or number, and shall include the Bates range for the Documents produced in each volume.

2. Except for privileged material, the Producing Party will produce each responsive document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. The Producing Party should submit any appendix, table, or other attachment by either attaching it to the responsive document or clearly marking it to indicate the responsive document to which it corresponds. Attachments must be produced along with the document to which they are attached, regardless of whether they have been produced separately. Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately.

3. Format of Production

    3.1. Documents stored in electronic or hard-copy formats in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

    a) Submit Microsoft Excel, Access, and PowerPoint files in native format with extracted text and metadata, except if any such files are being redacted. For non-redacted Excel files, produce a single-page slip sheet along with a copy of the native files. The native file should reside in the same directory as the Images and Extracted Text files and be named with the corresponding beginning Bates number of the document.

    b) Submit emails in TIFF format with extracted text and the following metadata and information as applicable:

| Metadata Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| ATTACHMENT TITLES | Subject (email) or filename (non-email) of attachment(s) – populated for parent records only |
| AUTHOR | Author of document |
| Bates Begin | Beginning Bates number of the email. |
| Bates End | Bates number of the last page of the email. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| CONVERSATIONINDEX | Email thread identification |
| Custodian | Name of the person from whom the email was obtained. |
| DOCTITLE | Document Title |
| DOCTYPE | File type extension |
| Email BCC | Names of person(s) blind copied on the email. |
| Email CC | Names of person(s) copied on the email. |
| Email Date Received | Date the email was received. [MM/DD/YYYY] |
| Email Date Sent | Date the email was sent. [MM/DD/YYYY] |
| Email From | Names of the person who authored the email. |
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems. |
| Email Subject | Subject line of the email. |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipients(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| FILE NAME | Filename of document |
| FILEPATH_ALL | Original path to each copy of the file, including any removed through exact de-duplication |
| FILESIZE | Byte size of native ESI file |
| Folder | File path/folder location of email. |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| POD | Protective Order Designation |
| PAGECOUNT | Number of pages per file |
| SENTMODDATE | Sent date (email) or last modified date (non-email) in MM/DD/YYYY format |

| Metadata Document Information | Description |
|---|---|
| SENTMODEDATE_FAMILY | SENTMODDATE of parent populated for all records in family |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |
| TITLE | Subject (email) or filename (non-email) |

c) Submit email attachments other than those described in subpart 3.1(a) in TIFF format. For all email attachments, provide extracted text and the following metadata and information as applicable:

| Metadata Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Native Link | Relative file path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

d) Submit all other electronic documents, other than those described in subpart 3.1(a), in TIFF format accompanied by extracted text and the following metadata and information as applicable:

3

[PROPOSED] ORDER AND STIPULATED PROTOCOL FOR CONDUCTING ELECTRONIC DISCOVERY
Case No. 5:22-cv-00179-EJD

| Metadata Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of the original custodian of the file. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY HH:MM:SS AM/PM] |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Originating Path | File path of the file as it resided in its original environment. |
| Native Link | Relative path to submitted native or near native files. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC-0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

e) Submit documents stored in hard copy in TIFF format accompanied by OCR with the following information:

| Metadata Document Information | Description |
|---|---|
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Bates number of the last page of the document. |
| Custodian | Name of person from whom the file was obtained. |

f) Submit redacted documents in TIFF format accompanied by OCR with the metadata and information required by relevant document type in subparts 3.1(a)–(e) above.

g) For any TIFF files produced, single-page 300 dpi CCITT Group IV black and white TIFFs should be provided with page break information in load file(s) (OPT) identifying the start and end of the document. Documents should retain document composition within output folders and should not be split across folders. Documents containing informative color should be produced in color in JPG format. All production images should be accompanied by document-level extracted text, including a path to the extracted text in the .DAT file and appropriate metadata as set forth in subparts 3.1(a)–(e) above. Extracted text (or OCR if extracted text is not available or a document is redacted) must be supplied as multi-page text files. The text files should reside in the same directory as the images and be named with the corresponding beginning Bates number of the document.

h) Any Document or ESI for which text cannot be extracted should be produced with OCR.

i) Documents shall be provided with (a) a delimited text data file using standard Concordance delimiters, and (b) an image load file. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production. 3.2. Submit data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats with all underlying formulas and algorithms intact. Submit data separately from document productions.

3.2. Produce electronic file and TIFF submissions as follows:

a) Where possible, productions should be submitted via a secure File Transfer Protocol such as Accellion. Where not possible, adhere to the following guidelines:

    i. For productions over 10 gigabytes that cannot be submitted via a secure File Transfer Protocol, use hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in USB 2.0 or 3.0 external enclosure.

      ii. For productions under 10 gigabytes that cannot be submitted via a secure File Transfer Protocol, CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

b) All documents produced in electronic format shall be scanned for viruses using reasonable commercial efforts prior to submission.

c) Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.